[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 83.]

FORBES, ADMR., APPELLANT, *v.* MIDWEST AIR CHARTER, INC. ET AL.,
APPELLEES.

[Cite as *Forbes v. Midwest Air Charter, Inc*., 1999-Ohio-85.]

*Torts—Wrongful death action—Determination of pilot in airplane crash—Trial court erred in instructing jury on the rebuttable presumptions contained in R.C. 4561.23.*

(No. 91-1259—Submitted October 27, 1998—Decided July 14, 1999.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 56815.

———————————

{¶ 1} On April 27, 1979, a Piper Cheyenne II aircraft crashed at the Lorain County Airport in Elyria, Ohio. Daniel F. Forbes and Henry L. Dietrich, the plane's only occupants, were both killed.

{¶ 2} The record indicates that at the time of the crash, Dietrich, a certified flight instructor and the assistant chief pilot of appellee Midwest Air Charter, Inc. ("Midwest"), was seated in the right front seat and that Forbes was seated in the left front seat. An instructor pilot typically sits in the right front seat. In a Piper Cheyenne II, the flight instruments can be controlled from either front seat.

{¶ 3} Although the record indicates that Forbes had a private pilot's license, the testimony suggests that he was not qualified to fly the Piper Cheyenne II. The record further indicates that Forbes had logged only eight hours of flight time with Dietrich, in the Piper Cheyenne II, prior to the crash.

{¶ 4} Forbes was in the process of purchasing the plane prior to the crash. Michael J. Garrihy, President of Midwest and a friend of Forbes, knew that Forbes was not capable of piloting the plane. Accordingly, Garrihy arranged for Midwest to supply Forbes with a pilot for flights in the Piper Cheyenne II, and arranged that the pilot (who turned out to be Dietrich) not give flight instructions to Forbes.

**{¶ 5}** On the day of the crash, Forbes filed the flight instrument plan, a common indicator of pilot status. However, several witnesses testified that students are routinely assigned the task of filing the flight instrument plan.

**{¶ 6}** Ray Fuqua, chief flight instructor for Midwest, testified that Dietrich would have been considered the "pilot in command." Further, Thomas V. Sumpter, Midwest's vice-president of operations, signed and submitted proof of loss documents to Midwest's insurance underwriter, which identified that Dietrich was the "pilot in command." However, in his testimony, Sumpter stated that, although the proof of loss was notorized, he had merely been confirming the dollar amount of the loss when he signed the form. Nevertheless, Sumpter acknowledged that the information in the form was correct. An investigation performed by the National Transportation Safety Board identified Dietrich as the "pilot in command."

**{¶ 7}** Ina Forbes, the widow of Forbes, filed a wrongful death action. At the conclusion of the trial, the trial court charged the jury to determine who had been the "pilot in command" at the time of the crash. The trial court informed the jury that it should consider Title 14 of the Code of Federal Regulations and R.C. 4561.23. The court read R.C. 4561.23 in its entirety to the jury.

**{¶ 8}** During deliberations, the jury submitted a question to the court about the exceptions to the rebuttable presumptions contained in R.C. 4561.23. The court provided the jury with a written answer, stating that "[a] presumption is a term used to signify that which may be assumed without proof or taken for granted" and that "[a] rebuttable presumption is a presumption which is not conclusive and which may be contradicted by evidence. The issue as to who was the [']pilot in command['] in this case is to be decided by the jury from a consideration of all of the evidence."

**{¶ 9}** The jury found in favor of Midwest. Ina Forbes appealed, arguing that the jury should not have been given an instruction concerning R.C. 4561.23. The court of appeals affirmed the judgment of the lower court, determining that the

instructions had been proper, since both parties had submitted "substantial credible evidence" on the issue of "pilot in command."

{¶ 10} The cause is now before this court upon the allowance of a discretionary appeal.

———————————

*Weisman, Goldberg & Weisman Co., L.P.A., David C. Landever* and *James R. Goldberg*, for appellant.

*Martindale, Brzytwa & Quick, John E. Martindale* and *Margaret Mary Meko;* and *Nicholas R. Curci*, for appellee Midwest Air Charter, Inc. et al.

*Gallagher, Sharp, Fulton & Norman, Michael R. Gallagher, Alton L. Stephens* and *Gary L. Nicholson,* for appellee Piper Aircraft Corporation, n.k.a. KEWPAC.

———————————

**PFEIFER, J.**

{¶ 11} The issue in this case is whether the jury was properly instructed on the issue of who was the "pilot in command." For the reasons that follow, we conclude that the jury should not have been instructed on the rebuttable presumptions contained in R.C. 4561.23.

{¶ 12} In *Ayers v. Woodard* (1957), 166 Ohio St. 138, 1 O.O.2d 377, 140 N.E.2d 401, this court stated: "A presumption is a procedural device which is resorted to only in the absence of evidence by the party in whose favor a presumption would otherwise operate; and where a litigant introduces evidence tending to prove a fact, either directly or by inference, which for procedural purposes would be presumed in the absence of such evidence, the presumption never arises and the case must be submitted to the jury without any reference to the presumption in either a special instruction or a general charge." *Id.* at paragraph three of the syllabus. Appellant Forbes argues that the *Ayers* case stands for the

proposition that presumptions, statutory or otherwise, are not provided to juries when evidence as to the subject matter of the presumption has been presented.

{¶ 13} In *State v. Myers* (1971), 26 Ohio St.2d 190, 55 O.O.2d 447, 271 N.E.2d 245, this court stated: "In a trial of a person for the offense of operating a motor vehicle while under the influence of alcohol, the presumption provided by R.C. 4511.19(B) may be included in the court's instructions to the jury and used by them in arriving at their decision, even though the prosecution introduces evidence of the defendant's physical appearance, his walk, his manner of speaking, the smell of his breath, and opinion evidence that defendant was under the influence of alcohol." *Id.* at paragraph two of the syllabus. Appellees argue that this case stands for the proposition that statutory presumptions are not subject to the rule of *Ayers* and, therefore, juries should be instructed as to the presumptions contained in R.C. 4561.23.

{¶ 14} As far as we can tell, the *Myers* decision has never been relied upon by this or any court as to the point in contention. The *Ayers* decision, on the other hand, has been relied upon by this court under analogous conditions. *Cotterman v. Ohio Dept. of Pub. Welfare* (1986), 28 Ohio St.3d 256, 258, 28 OBR 334, 336, 503 N.E.2d 757, 759; *Cincinnati Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (1997), 78 Ohio St.3d 325, 328, 677 N.E.2d 1197, 1200; Evid.R. 301, Staff Note.

{¶ 15} *Cotterman* involved the presumption set forth in Ohio Adm.Code 5101:3-50-22(C). This court stated that the presumption "would *ab initio* be inapplicable" where evidence was presented to rebut the presumption. *Id.*, 28 Ohio St.3d at 258, 28 OBR at 336, 503 N.E.2d at 759. The court's sole authority, and without comment, was *Ayers*. *Id.*

{¶ 16} *Cincinnati Bd. of Edn.* involved the common-law presumption that "the sale price reflects the true value of property." *Id.*, 78 Ohio St.3d at 327, 677 N.E.2d at 1199, citing *Ratner v. Stark Cty. Bd. of Revision* (1986), 23 Ohio St.3d 59, 61, 23 OBR 192, 193, 491 N.E.2d 680, 682; *Walters v. Knox Cty. Bd. of*

*Revision* (1989), 47 Ohio St.3d 23, 24, 546 N.E.2d 932, 934. In *Cincinnati Bd. of Edn.*, this court stated that "[i]f evidence had been introduced by the BOE [board of education], or others, which had shown that the sale was not an arm's-length transaction, the rebuttable presumption that sale price reflects true value either would never have arisen or it would have disappeared." *Id.*, 78 Ohio St.3d at 328, 677 N.E.2d at 1200. The court relied solely on *Ayers* in support of this proposition.

{¶ 17} Evid.R. 301 states, "In all civil actions and proceedings not otherwise provided for by statute enacted by the General Assembly or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast." The Staff Note specifically states that Evid.R. 301 "does not change Ohio law relative to the effect of a presumption in civil cases," citing *Ayers*.

{¶ 18} The *Myers* court distinguished its decision from *Ayers* because *Ayers* involved a common-law presumption, while *Myers* involved a statutory presumption. *Myers*, 26 Ohio St.2d at 200, 55 O.O.2d at 452, 271 N.E.2d at 251. Given *Cotterman*, which involved an Administrative Code presumption, and Evid.R. 301, which was adopted by this court long after *Myers* was decided, we are convinced that the more apt distinction is between a civil case, *Ayers*, and a criminal case, *Myers*. We conclude that *Ayers* governs the instant case and that *Myers* has no application.

{¶ 19} Accordingly, we conclude that the jury in this case should not have been instructed as to the statutory presumptions set forth in R.C. 4561.23 because "evidence tending to prove a fact * * * which for procedural purposes would be presumed in the absence of such evidence," was presented. *Ayers*, 166 Ohio St. 138, 1 O.O.2d 377, 140 N.E.2d 401, at paragraph three of the syllabus. The

judgment of the court of appeals is reversed, and the cause is remanded to the trial court for a new trial.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 20} I respectfully dissent because I believe that the majority incorrectly analyzes the issue presented by this appeal and thereby arrives at an erroneous conclusion.

{¶ 21} The majority decides the case by reviewing the decisional law on the subject of rebuttable presumptions, but fails to analyze the evidentiary prerequisites for the application of that law. To properly decide this appeal, the court must sort the trial evidence into the relevant categories: (1) direct evidence, if any, tending to prove the *presumed fact*, *i.e.*, which pilot was actually the pilot in command ("PIC"), and (2) evidence tending to prove *basic facts* that support the rebuttable presumptions in the PIC statute. Without any evidence in the first category (direct evidence), there is no reason to withhold the jury instruction on the PIC presumptions.

{¶ 22} In 2 McCormick, Evidence (4 Ed. Strong Ed.1992) 460, 460-461, Section 344, Professor McCormick teaches:

"Sometimes the effect of a presumption * * * is easy to discern; it follows naturally from the definition of the term. Thus, where a party proves the *basic facts* giving rise to a presumption, it will have satisfied its burden of producing evidence with regard to the *presumed fact* and therefore its adversary's motion for directed verdict will be denied. If its adversary fails to offer any evidence or offers evidence going only to the existence of the *basic facts* giving rise to the presumption and not

6

to the *presumed fact*, the jury will be instructed that if they find the existence of the *basic facts*, they must also find the *presumed fact*." (Footnotes omitted.) (Emphasis added.)

{¶ 23} Applying decisional law and McCormick's teachings to the facts of this case, I conclude that the trial court properly instructed the jury on the PIC presumptions found in R.C. 4561.23. Two individuals, who were both pilots, were aboard the accident flight, and neither one survived. And no one testified from first-hand knowledge about who was the PIC during the flight. No one actually witnessed who was flying the plane during the flight, no one spoke with Forbes or Dietrich about who the PIC was during the flight, and no communication, which may have established who was in control of the aircraft, occurred between the plane and air traffic control. Neither party, therefore, was able to offer substantial credible direct evidence at trial regarding the *presumed fact* — which of the two occupants was the PIC. Rather, the parties sought to prove or disprove with the trial evidence the various *basic facts* giving rise to the PIC presumption in divisions (A), (D), and (E) of R.C. 4561.23.

Division (A) of the PIC Statute

{¶ 24} Appellees presented evidence at trial to prove that Forbes was the occupant of the left front seat. This *basic fact* gives rise to the *presumed fact* that Forbes was the PIC, unless appellant offered direct evidence that Forbes was not the PIC. No direct evidence was presented.

{¶ 25} In *Ayers v. Woodard* (1957), 166 Ohio St. 138, 1 O.O.2d 377, 140 N.E.2d 401, this court decided that there must be "direct evidence" or "direct proof," as opposed to circumstantial and/or opinion evidence, regarding the *presumed fact* in order to defeat a rebuttable presumption. *Id.*, 166 Ohio St. at 144-145, 1 O.O.2d at 380-381, 140 N.E.2d at 406.

{¶ 26} The trial court properly instructed the jury to consider the trial evidence presented to prove or disprove the *basic fact* of cockpit seating for

purposes of applying the presumption in R.C. 4561.23(A). If the jury credited the evidence that Forbes was in the left seat, it would be required to find the *presumed fact*, *i.e.*, that Forbes was the PIC pursuant to R.C. 4561.23(A).

### Division (D) of the PIC Statute

{¶ 27} Division (D) of R.C. 4561.23 begins with the phrase "[n]otwithstanding divisions (A)." Thus, the rebuttable presumption that the pilot in the left seat is the PIC is trumped by the presumption applicable to instructional flights. Appellant presented evidence at trial to prove the *basic fact* that Dietrich instructed Forbes during the accident flight. That evidence included entries for prior flights in Forbes's pilot logbook, testimony of eyewitnesses who believed that the maneuver performed just prior to the crash was one done for flight instruction purposes, and testimony stating that students often file flight plans during flight instruction sessions. Appellees presented evidence contradicting the evidence produced by appellant, *e.g.*, statements that Dietrich was instructed not to give flight instructions to Forbes. Accordingly, the issue of whether the flight was instructional is a matter of proof of a *basic fact* (instructional flight) that supports the *presumed fact* that the instructor was the PIC. But, again, since there was no direct evidence that either pilot was the PIC, the court correctly instructed on the PIC presumption from R.C. 4561.23(D).

Division (E) of the PIC Statute

{¶ 28} Appellees presented evidence to prove the *basic fact* that Forbes filed the instrument flight plan. According to R.C. 4561.23(E), that *basic fact* establishes who was the PIC, notwithstanding other evidence of seat occupancy or instruction. The *basic fact* evidence showed that Forbes had an instrument rating and that Forbes filed the instrument flight plan. Appellant sought to rebut the flight plan evidence with evidence that the flight plan was cancelled immediately prior to the crash. But again, no direct evidence was presented regarding who was the PIC. Consequently, the trial court properly instructed the jury to consider this evidence presented to prove or disprove the *basic fact* that Forbes filed the instrument flight plan for purposes of applying the presumption in Division (E).

Conclusion

{¶ 29} R.C. 4561.23 allows either of the two pilots to be labeled as the PIC, depending on which of the several contested *basic facts* the jurors believed in this case. Accordingly, the trial court properly charged the jury on the rebuttable presumptions in R.C. 4561.23, and I would affirm the judgment of the court of appeals.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

_____

**Lundberg Stratton, J., dissenting.**

{¶ 30} I agree with the appellate court that it was proper for the trial court to instruct the jury on the rebuttable presumptions contained in R.C. 4561.23 regarding the "pilot in command."

{¶ 31} The majority relies primarily upon *Ayers v. Woodard* (1957), 166 Ohio St. 138, 1 O.O.2d 377, 140 N.E.2d 401. In *Ayers,* the court recognized a *common-law* presumption as a device to supply facts where none is available. *Ayers*, 166 Ohio St. at 144, 1 O.O.2d at 380-381, 140 N.E.2d at 406. Thus, "

'[c]ourts will not go into the domain of presumptions where direct proof can be obtained.' " *Id*. Therefore, under *Ayers*, where either party presents some evidence as to a presumed fact, the presumption disappears. Although the *Ayers* court does not refer to the theory by name, it employed the "bursting bubble" theory of rebuttable presumptions. 2 McCormick, Evidence (4 Ed. Strong Ed.1992) 460, 462, Section 344. Under the bursting bubble theory, if some evidence is produced pertaining to the presumed fact, the presumption disappears. *Id*. Applying this theory, the court in *Ayers* held that because direct evidence was introduced that went to the presumed fact, the presumption disappeared.

**{¶ 32}** In this case, R.C. 4561.23 sets out a hierarchy of *statutory* presumptions as to who was the pilot in command with regard to an aircraft accident. The majority, consistent with the analysis set out in *Ayers*, holds that because the parties presented evidence as to who was the pilot in command, the statutory presumptions should have disappeared.

**{¶ 33}** I disagree with the majority's conclusion that the statutory presumptions in R.C. 4561.23 are a mechanism used for the purpose of *fact-finding*. Presumptions are not created solely as a device to supply facts where none is available, but are also created to address *public policy concerns*. See, *e.g*., *State v. Myers* (1971), 26 Ohio St.2d 190, 200, 55 O.O.2d 447, 452-453, 271 N.E.2d 245, 251-252; see, also, 2 McCormick, *supra*, at 454-460, Section 343.

**{¶ 34}** In an aviation accident, the complex rules and regulations, as well as rules of regular practice in the aviation industry, are not matters within the common understanding of a layperson or juror. Unlike driving a car, where common sense leads a jury to conclude that the person behind the wheel is the person driving and in control, there is no such parallel in most aircraft.

**{¶ 35}** Most aircraft are equipped with two pilot's seats — each seat equipped with controls that let either pilot fully control the aircraft. The issues of whether a pilot is an instructor or student, who filed the flight plan, and who is in

the left or right seat are all important in determining who is in control of an airplane. Therefore, I believe that the purpose of the statutory presumptions in R.C. 4561.23 is to clarify the complex rules of pilot liability in the specific instance where two or more occupants of the plane were qualified to fly an aircraft that had dual controls that allowed either pilot to control the aircraft.

{¶ 36} Because aviation is controlled by federal regulations, federal law has established the legal meaning of "pilot in command." Federal regulations define the term "pilot in command" (Section 1.1, Title 14, C.F.R.) and establish that a pilot in command is responsible for operation of that aircraft. (Section 1.1, Title 14, C.F.R.) But federal law does not provide any guidance in determining the *identity* of the pilot in command for purposes of assessing liability where the aircraft had dual controls and two qualified pilots were flying the plane. Therefore, in promulgating R.C. 4561.23, the General Assembly sought to remedy this void in the law as revealed by the Senate Judiciary Report, which states:

"The purpose of this legislation is to provide statutory rules for rebuttable presumption of who is 'pilot in command' of an aircraft when there has been a crash which has involved possible pilot negligence and all of the occupants were killed. Federal Civil Air Regulations provide that when *more than one licensed pilot occupies a plane* in flight, *one* of them *shall be solely responsible* for the operation and safety of the plane and has final authority for its operation. The *federal regulations do not define who, as a matter of law, shall be conclusively presumed to have been appointed 'pilot-in-command.' The bill attempts to relieve this situation."* (Emphasis added.) Legislative Service Commission, Senate Judiciary Committee, Am.H.B. No. 79 (1961).

{¶ 37} I believe that in promulgating R.C. 4561.23, the General Assembly intended that jurors be instructed on the statutory presumptions in R.C. 4561.23 in order to clarify the law on pilot liability where two qualified pilots occupied a plane with dual controls. In a situation where the presumption is created for a policy

reason, discarding the presumption on the basis that some evidence was presented may defeat the policy considerations upon which the presumption is based.

{¶ 38} The presumptions exist to provide a road map to jurors in examining the facts and determining who was the pilot in command to establish liability. Therefore, as in *Myers,* the jury charge on the presumptions should be given whether or not other evidence is presented *and* as an aid to evaluating that evidence.

{¶ 39} However, the presumptions in R.C. 4561.23 can be rebutted, pursuant to the statute itself, if evidence is presented to refute the presumptions. But that is a matter the jury, not the judge, should evaluate as part of the its fact-finding role. Because the statutory presumptions are given for public policy reasons, it is the jury that applies the facts to those presumptions.

{¶ 40} In this case, there was no clear, direct evidence as to who was the pilot in command. Facts, inference, and opinion evidence were presented by both sides in support of their respective claims that the other pilot was in command. Both pilots were fully licensed to fly the Piper Cheyenne. The prior log book entries could be interpreted to support both positions. Dietrich may or may not have been giving Forbes flight instruction. Flight plans can be filed by either a student or an instructor. The last maneuver witnessed by two spectators could have been a maneuver for flight instructor purposes or the pilot could have been simply performing the maneuver for practice. It was up to the members of the jury to take all the conflicting evidence, weigh it according to the statutory presumptions as to who was the pilot in command, decide if those presumptions were rebutted, and render their verdict accordingly. This they did in this case.

{¶ 41} Therefore, because I believe the purpose of the presumptions in R.C. 4561.23 is to clarify legal liability as opposed to fact-finding and because I believe the jury was properly charged as to the pilot in command, I respectfully dissent.

_____