[Cite as *AC Asset, L.L.C. v. Mitchell*, 2022-Ohio-1763.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

AC ASSET, L.L.C., :

    Plaintiff-Appellee, :

    v. :

CHANEL MITCHELL, ET AL., :

    Defendants-Appellants. :

No. 110818

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 26, 2022

---

Civil Appeal from the Cleveland Municipal Court
Housing Division
Case No. 2020 CVG 005551

---

### *Appearances:*

Powers Friedman Linn, P.L.L, and Rachel C. Cohen, *for appellee.*

L. Bryan Carr, *for appellant* Chanel Mitchell.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Chanel Mitchell ("appellant"), appeals from the housing court's judgment affirming the magistrate's decision and awarding damages in favor of plaintiff-appellee, AC Asset L.L.C. ("AC Asset"). For the reasons that follow, we affirm.

{¶ 2} On June 24, 2020, AC Asset filed a complaint for forcible entry and detainer and money damages against appellant and her cousin, Taeylor Mitchell ("Taeylor") (collectively "the tenants"). The complaint alleged that appellant and Taeylor were tenants with a written lease agreement for the premises located at 1383 West 114th Street in Cleveland (hereinafter "leased premises"). It further alleged that the tenants failed to leave the premises following the requisite three-day notice and owed back and future rent pursuant to the terms of the lease agreement. The complaint sought damages in the amount of $1,524 for unpaid rent and requested additional contractual damages. AC Asset attached to the complaint the lease agreement and all other requisite documents to maintain the action.

{¶ 3} Following a July 30, 2020 virtual hearing, the housing court granted AC Asset's motion to dismiss Count 1 (forcible entry and detainer) against the tenants because the premises was vacant.

{¶ 4} On August 21, 2020, appellant, pro se, filed an answer denying that she (1) lived or resided at the leased premises, and (2) signed the lease attached to the complaint. She stated that she was a victim of identity theft and referenced a police report filed with the Lakewood Police Department. Appellant included with her answer a copy of two lease agreements purportedly proving that she resided at another location during alleged lease term.

{¶ 5} AC Asset subsequently moved for summary judgment against appellant, contending that because she did not respond to AC Asset's first set of

interrogatories, production of documents, and admissions, she effectively admitted to all matters, and thus, it was entitled to judgment as a matter of law.

{¶ 6} Appellant opposed AC Asset's motion, contending that Taeylor fraudulently used her identity to obtain the lease. She maintained that AC Asset failed to prove that she electronically signed the lease agreement. In support, she provided (1) partial copies of two lease agreements purportedly proving that she resided at other locations than the leased premises; (2) a 2018 email she sent to Taeylor referencing an employment contract; (3) a direct pay report from Wells Fargo showing payments she made to Taeylor from April to November 2019; (4) a July 2020 email from a Lakewood detective containing information on "Identity Theft Reference and Assistance," and referencing a police report number; (5) an email between her and an attorney from AC Asset; and (6) a printout of the docket from the underlying case. Subsequently, appellant filed a new answer to the complaint that also asserted a counterclaim.

{¶ 7} The housing court denied AC Asset's motion for summary judgment, finding that AC Asset served appellant with the discovery requests at an address where she did not reside. It also struck appellant's new answer and counterclaim, finding that she did not seek leave of court prior to filing.

{¶ 8} In preparation for trial, AC Asset filed a trial brief with a list of witnesses and exhibits, including (1) the lease agreement containing the electronic signatures of both appellant and Taeylor; (2) an audit report printed from Adobe Sign showing a timeline of the preparation, submission, and execution of the lease

agreement; (3) an accounting statement regarding the premises; (4) receipts from repairs made to the premises following vacancy; (5) photographs of the premises following vacancy; (5) rental applications purportedly submitted by appellant and Taeylor; and (6) an employment contract between appellant and Taeylor. Appellant did not file a reciprocal brief or exhibits. The matter proceeded to trial before a magistrate who heard the following testimony.

{¶ 9} Cindy Opincar testified that she is the leasing agent for AC Asset. She stated that on or about April 15, 2020, she called appellant at the phone number listed on appellant's rental application and had a conversation with her regarding making rent payments. According to Opincar, appellant did not advise her that her identity had been stolen or that she was not responsible for the debt. On cross-examination, Opincar admitted that she had never seen appellant.

{¶ 10} Daryl Kertesz testified that he is the property manager for AC Asset and familiar with its business operations. According to Kertesz, appellant and Taeylor each electronically submitted the rental application and uploaded a copy of their driver's license and paystubs, along with an application fee. Regarding appellant's application, it was noted that the applicant was "cosigning for applicant." (Tr. 60; exhibit No. I.) A copy of their rental applications was admitted as exhibit No. I.

{¶ 11} Kertesz also explained AC Asset's business practices and procedures involving electronically executing lease agreements. He testified about Exhibit B, which was an audit report from Adobe Sign. According to Kertesz, the audit report

is a "trail system" that tracks the signing process of the lease. He explained that AC Asset generates the lease and sends it electronically to the tenant's email address provided on the rental application. He stated that after the lease is executed, it is automatically emailed back to AC Asset. Kertesz said that after the document is fully executed by all parties, a copy is electronically sent to the tenant.

{¶ 12} Kertesz testified that both appellant and Taeylor electronically executed the lease in the same manner as all leases that AC Asset issues. He further discussed and explained the information contained in the audit report. Kertesz said that according to Exhibit B, the lease was emailed simultaneously to appellant and Taeylor at the respective email addresses provided on their rental application. The report shows that Taeylor viewed the lease, and ten minutes later, appellant viewed the lease. According to the report, appellant e-signed the lease, and over two hours later, Taeylor e-signed the lease. The document was then emailed and viewed by Opincar, who also e-signed it. The fully executed lease was then emailed to all parties.

{¶ 13} Kertesz testified that pursuant to the audit report, appellant viewed the email containing the lease agreement and signed the lease from the same IP address. He stated that pursuant to the audit report, Taeylor viewed the email containing the lease agreement and e-signed the lease from different IP addresses, and different from the IP address associated with appellant's execution of the lease. Kertesz testified that it was his understanding that different computers use different IP addresses. (Tr 32.) Appellant did not object to Kertesz's testimony or

assert that an expert witness was required to testify about the significance of IP addresses.

{¶ 14} Kertesz further testified that he was present when Opincar called appellant in April 2020. According to Kertesz, he heard appellant tell Opincar that Taeylor "needed to learn her lesson." (Tr. 34). He stated that appellant did not allege during this conversation that Taeylor had stolen her identity.

{¶ 15} Appellant testified that she employed Taelyor as a nanny from 2018 until March 2020. She stated that during that time, Taeylor had unfettered access to her personal information, including her driver's license, social security number, banking information, and work computer. She stated that she researched the IP address identified on the Adobe Sign audit report and discovered that the address belonged to Oracle, the company she worked for that was based out of California. Appellant testified that when she worked for Oracle, she lived in Texas. She explained to the court that Taeylor could have used her work computer simultaneously with another computer to access and sign the lease on her own behalf and forge her name. She denied that she electronically executed the lease and that she ever spoke with Opincar.

{¶ 16} In support of her claim that Taeylor forged her signature, appellant stated that she filed a police report with Lakewood police department. She admitted, however, that she did not provide AC Asset with a copy of the police report, nor did she submit it to the court as an exhibit. She admitted that other

than the report, she did not have any other proof that Taeylor used her identity to execute the lease.

{¶ 17} During the trial, the magistrate extended great courtesy and consideration to appellant by allowing her to refer to, use, and rely on the exhibits she filed with her answer and summary judgment opposition. Over objection, the trial court admitted those exhibits into evidence.

{¶ 18} At the close of trial, the magistrate stated that she would take the matter under advisement but because Taeylor failed to answer the complaint, AC Asset was entitled to a default judgment against her.

{¶ 19} On June 3, 2021, the magistrate issued a thorough written decision finding that AC Asset proved by a preponderance of the evidence that the lease for the premises was signed by appellant and that appellant did not meet her burden of demonstrating that she was a victim of identity theft or that anyone other than herself applied for the apartment and signed the lease. The magistrate further determined that AC Asset was entitled to damages in the amount of $2,540 for unpaid rent and $382.85 for damages beyond normal wear and tear to the leased premises. After deducting the security deposit amount, the magistrate concluded that appellant and Taeylor were liable for damages in the amount of $2,287.85.

{¶ 20} The housing court approved and confirmed the magistrate's decision the same day, and entered judgment against appellant and Taeylor in the amount of $2,287.85.

{¶ 21} Appellant retained counsel and filed timely objections, contending that the magistrate erred in its determination that she failed to prove that Taeylor assumed her identity and forged her signature on the lease. Specifically, she raised the following three objections: (1) her signature was used on the lease without permission; (2) she had no knowledge of the rental application; and (3) she never resided at the property. In support, appellant provided for the first time a copy of the July 1, 2020 police report she made with the Lakewood Police Department, and copies of text messages purportedly exchanged between her and Taeylor regarding Taeylor renting an apartment on West 114th Street. Appellant also attached to her written objections copies of her W-2 tax forms, utility bills, her child's school enrollment application, and proof of payment of rent at locations other than West 114th to prove that she did not live at the leased premises.

{¶ 22} Before the housing court ruled on appellant's objections, appellant, pro se, filed additional "evidence" in support of her objections and directed the court to "several inaccurate details" that AC Asset presented at trial. Appellant submitted photographs of text messages between her and Taeylor, information regarding her employment at Oracle, a copy of a utility bill, and her lease agreement from October 2017 until October 2019. According to appellant, the additional documentation proved that Taeylor assumed her identity and forged her name on the lease agreement.

{¶ 23} On August 18, 2021, the housing court issued a thorough written decision overruling appellant's objections and affirming the court's prior decision

confirming the magistrate's decision. The housing court, citing Civ.R. 53(D)(4)(d), determined that it would not consider appellant's exhibits attached to her objections because she failed to demonstrate that those exhibits were unavailable to her at the time of the trial. The court overruled appellant's objections, finding that the testimony and evidence presented at trial demonstrated that both appellant's and Taeylor's signatures were electronic and that appellant's copy of the lease was accessed and signed from an IP address belonging to her employer. The court further found that appellant's untimely evidence of text messages between her and Taeylor did not establish that she had no knowledge of the rental application. The court further noted that although appellant finally presented the police report, she failed to explain why she did not present it prior to trial during discovery or at trial. Finally, the court determined that whether appellant actually resided at the leased premises was not dispositive to the issue of whether she was liable under the terms of the lease because pursuant to the rental application, she was intended to be a co-signer of the lease.

{¶ 24} Appellant now appeals, raising two assignments of error.

## I.     Standard of Review

{¶ 25} Civ.R. 53 governs proceedings before a magistrate and the trial court's duties in accepting or rejecting a magistrate's rulings. A party has 14 days from the issuance of a magistrate's decision to file objections with the trial judge; the objections are to be specific and state with particularity the grounds of objection. Civ.R. 53(D)(3)(b)(ii). The party who objects to the magistrate's factual findings has

the duty to provide a transcript of the evidence relevant to the findings to the trial court, or an affidavit of that evidence. Civ.R. 53(D)(3)(b)(iii). Pursuant to Civ.R. 53(D)(3)(b)(iv), except for a claim of plain error, a party that fails to object to the magistrate's decision may not assign as error on appeal the trial court's adoption of any of the magistrate's factual findings or legal conclusions.

{¶ 26} A trial court's decision to adopt a magistrate's decision is reviewed for an abuse of discretion. *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 7. A discretionary act that reaches an end or purpose clearly against reason and evidence is an abuse of discretion. *In re Guardianship of S.H.*, 9th Dist. Medina No. 13CA0066-M, 2013-Ohio-4380, ¶ 9.

## II. Defective Lease

{¶ 27} In her first assignment of error, appellant contends that the trial court erred in adopting the magistrate's decision that found her liable as a signatory on a defective lease.

{¶ 28} Appellant contends that the lease was defective because the electronic signatures on the lease were not witnessed or notarized as required by the Ohio Statute of Conveyances, promulgated under R.C. 5301.01(A). Appellant did not raise this issue during trial or in her objections to the magistrate's decision. Accordingly, we find that the argument is waived. *See* Civ.R. 53(D)(3)(b)(iv).

{¶ 29} Next, appellant contends that the trial court's finding that she signed the lease is not supported by the evidence. In support, she directs this court to her own testimony where she claimed that Taeylor obtained and used her personal

information to surreptitiously execute the lease, and where she denied that she (1) completed and submitted the rental application; (2) signed the lease; (3) spoke with any agents from AC Asset; (4) visited or lived at the leased premises; and (5) used the email address from which the application was received, submitted, and signed.

{¶ 30} "'In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight).'" *Holliday v. Calanni Ents.*, 2021-Ohio-2266, 175 N.E.3d 663, ¶ 21 (8th Dist.), quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19; *Fanous v. Ochs*, 8th Dist. Cuyahoga No. 98649, 2013-Ohio-1034, ¶ 22 (burden of proof in a civil action for past due rent under a lease is preponderance of the evidence). "'Preponderance of the evidence simply means "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it."'" *Id.*, quoting *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15, quoting *Black's Law Dictionary* (6th Ed.1998) 1182.

{¶ 31} In a manifest-weight review, the reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Moreover, this court must make every reasonable

presumption in favor of the trial court's judgment and findings of fact and, if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the trial court's judgment. *Eastley* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

{¶ 32} "A lease is a contract between a landlord and the tenant." *Christe v. GMS Mgt. Co.*, 124 Ohio App.3d 84, 88, 705 N.E.2d 691 (9th Dist.1997). A signature on a contract creates a rebuttable presumption that it was validly executed. *R.C. Olmstead, Inc. v. GBS Corp.*, 7th Dist. Mahoning No. 08 MA 83, 2009-Ohio-6808, ¶ 45, citing *Cardinal Constr. Co. v. Americare Corp.*, 3d Dist. Marion No. 9-84-46, 1986 Ohio App. LEXIS 6579 (Apr. 28, 1986). The use of an electronic signature does not change this rebuttable presumption. *See Bell v. Hollywood Entertainment Corp.*, 8th Dist. Cuyahoga No. 87210, 2006-Ohio-3974, ¶ 16, fn.3 (a contract may not be denied legal effect or enforceability because an electronic signature was used). "A rebuttable presumption is a presumption which is not conclusive and which may be contradicted by evidence." *Forbes v. Midwest Air Charter, Inc.*, 86 Ohio St.3d 83, 85, 711 N.E.2d 997 (1999).

{¶ 33} In order to rebut this presumption, "the party denying the signature must introduce evidence to support [her] denial which if believed would be sufficient to permit the trier of fact to make a finding in [her] favor." *Bates & Springer, Inc. v. Stallworth*, 56 Ohio App.2d 223, 233, 382 N.E.2d 1179 (8th Dist.1978), (construing R.C. 1303.36(A) and the validity of a signature on a promissory note).

When a defendant presents such evidence to rebut the presumption, the burden then remains with the plaintiff to establish that the signature was genuine. *R.C. Olmstead* at ¶ 45. Accordingly, even though the burden in this case rests with AC Asset, appellant has some responsibility to refute the evidence. *SMS Fin. 30 v. Federick D. Harris, M.D., Inc.*, 2018-Ohio-2064, 112 N.E.3d 395, ¶ 46 (8th Dist.), citing *Knox Cty. Local Emergency Planning Commt. v. Santmyer Oil Co.*, 5th Dist. Knox No. 01CA0035, 2002-Ohio-3590, ¶ 17 (in a civil case, where the preponderance of the evidence is the burden of proof, there remains some responsibility on the defendant to refute the evidence).

{¶ 34} The trial court found that AC Asset withstood its burden of proving by a preponderance of the evidence that appellant executed the lease agreement. In support, AC Asset provided documentary evidence that appellant electronically submitted a rental application, along with a copy of her driver's license and a pay stub. Additionally, AC Asset provided evidence of an electronically signed lease agreement and an audit report documenting the execution of the lease agreement by both appellant and Taeylor.

{¶ 35} Although appellant testified that she did not execute the lease, she provided no corroborative, credible evidence that Taeylor assumed her identity and executed the lease agreement on her behalf. During trial, appellant admitted that other than a police report, which she failed to provide during trial, she had no other proof to substantiate her claim. Moreover, the documents that she did provide did not establish that she either actually lived elsewhere or that she paid rent to another

landlord. In fact, the magistrate specifically found that the documentation appellant relied upon to corroborate her defense of identity theft presented "very little probative value to the issue at hand." Accordingly, the housing court did not abuse its discretion in adopting the magistrate's decision that found that appellant failed to rebut with sufficient evidence the presumption that the lease was validly executed, or failed to demonstrate that she was the victim of identity theft.

{¶ 36} This court does not act as factfinders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the factfinder could base its judgment. *State v. Bank*, 5th Dist. Licking No. 2004CA00086, 2005-Ohio-3562, ¶ 26, citing *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 Ohio App. LEXIS 15233 (Feb. 10, 1982). The fact that appellant offered some evidence to rebut the presumption, even if it is not specifically disputed, does not automatically compel the conclusion that Taeylor forged appellant's signature or that appellant did not sign the lease. Whether the rebuttal evidence rises to the level sufficient to rebut the presumption is still an issue left to the trier of fact. *Bank* at *id*. In this case, the housing court found that appellant's testimony alone was insufficient. We find the trial court's judgment to be supported by competent, credible evidence. Accordingly, we cannot say that the trial court abused its discretion in adopting the magistrate's decision. The assignment of error is overruled.

### III. IP Address

{¶ 37} During trial, Kertesz testified regarding AC Asset's business practice and process of electronically creating, submitting, and signing a lease. He stated that appellant and Taeylor executed the lease in the same manner as all leases that AC Asset generates. During his testimony, he stated that the IP addresses on AC Asset's Adobe Sign audit report were different from "Chanel Mitchell" and Taeylor, but that "Chanel Mitchell" viewed and e-signed the lease agreement from the same IP address. Without objection, Kertesz stated that it was his understanding that different computers use different IP addresses. On cross-examination, appellant testified that she researched the IP address listed on the report and that the IP address used by "Chanel Mitchell" to view and e-sign the lease agreement belonged to Oracle — her place of employment.

{¶ 38} In its independent review of the magistrate's decision and filed objections, the trial court noted that appellant and Taeylor each signed the lease from separate IP addresses and that the IP address associated with appellant's access and execution of the lease was sent from "a Texas IP address, the state where [appellant's] employer was based."

{¶ 39} Appellant contends in her second assignment of error that the housing court erred by relying on an IP address to support its conclusion that she signed the lease, without the presentation of expert testimony. Appellant is misreading the housing court's decision. It did not conclude that the IP address evidence proved that she signed the lease. The housing court upheld the

magistrate's decision that found that appellant failed to provide sufficient evidence to counter AC Asset's evidence that appellant was liable under the terms of the lease.

{¶ 40} Nevertheless, expert testimony was not required in this instance. Expert testimony is necessary whenever a factual issue is beyond the ordinary, common and general knowledge and experience of a layperson. *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97, 103, 592 N.E.2d 828 (1992) and *Darnell v. Eastman*, 23 Ohio St.2d 13, 261 N.E.2d 114 (1970), syllabus.

{¶ 41} Appellant provided information during trial regarding Oracle's ownership of the IP address — information that the trial court relied upon. Arguably, any error regarding the lack of expert testimony could be deemed invited error. Nevertheless, expert testimony was not required because the testimony regarding IP addresses was not beyond ordinary, common knowledge. The testimony was used merely to show that "Chanel Mitchell" utilized the same IP address to open and sign the lease. Additionally, appellant testified that she researched the IP address and discovered that it belonged to Oracle, her employer. Granted, the housing court may have been incorrect in its assertion that appellant's employer was based in Texas, but the misstatement is harmless because appellant testified that she worked for Oracle while living in Texas. It is irrelevant where appellant's employer is headquartered; the relevant aspect of the testimony is that the IP address belonged to appellant's employer — testimony that appellant herself provided.

**{¶ 42}** Accordingly, we find that expert testimony was not required when the evidence was used merely to compare the IP address when the lease was accessed and signed and to show that the IP address belonged to appellant's employer. Any inference drawn from that testimony and evidence was left to the trier of fact. Accordingly, the assignment of error is overruled.

**{¶ 43}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, A.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR