[Cite as *Estate of Vasquez v. Tallmadge Health & Rehab Ctr.*, 2026-Ohio-1647.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ESTATE OF JEAN L. VASQUEZ,     :
BY MICHELLE DODDS-NALLEY,
ADMINISTRATOR OF THE ESTATE     :
OF JEAN L. VASQUEZ, DECEASED,

    :

Plaintiff-Appellee,     :

                       No. 115395

v.     :

TALLMADGE HEALTH AND     :
REHAB CENTER, ET AL.,

Defendants-Appellants.     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 7, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-110132

---

### *Appearances:*

Tittle & Perlmuter and Allen C. Tittle; Flowers & Grube
and Louis E. Grube, *for appellee.*

Marshall Dennehey, P.C., and Leslie M. Jenny, *for
appellants*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellants Tallmadge Health and Rehab Center, Tallmadge Healthcare

Group, LLC, Saber Healthcare Holdings, LLC, Saber Healthcare Group, LLC, Saber

Governance, LLC, BNV Dynasty, LLC, SHH Holdings, LLC, WIW Dynasty, LLC, WWBV Holdings, LLC, Benjamin N. Volpe, William Weisburg, Valerie Youell, Gregory Nicoluzakis, Sara Burton, and Harikrishna Chouda Ponnam ("appellants") appeal the judgment of the trial court denying their motion to stay and enforce an arbitration agreement under R.C. 2711.03. Appellants argue that the trial court erred in denying their motion because the arbitration agreement was binding, conscionable, and enforceable.

{¶ 2} After a thorough review of the applicable law and facts, we find that the arbitration agreement is unenforceable because appellants failed to prove the validity of decedent Jean Vasquez's ("Jean") electronic signature. We overrule the sole assignment of error and affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 3} Jean was admitted to Tallmadge Health and Rehab Center ("Tallmadge") in December 2023. Tallmadge is a long-term care facility that offers skilled nursing and rehabilitation services. At the time of her admission, Jean was noted to be a fall risk.

{¶ 4} Upon being admitted to Tallmadge, Jean was presented with various admission documents. Appellants claim that Jean electronically signed all the documents presented to her, including an electronic signature acknowledgement and an arbitration agreement ("Agreement"). Following Jean's admission, a meeting was held with Jean's family. The arbitration agreement was not discussed during the meeting.

{¶ 5} Jean suffered a fall during her stay at Tallmadge, resulting in a fractured femur, and she later died from her injury. Appellee Estate of Jean L. Vasquez, by Michelle Dodds-Nalley ("Dodds-Nalley"), Administrator of the Estate of Jean L. Vasquez, deceased ("Estate"), filed a complaint against appellants, alleging nursing-home neglect, medical malpractice, and wrongful death.

{¶ 6} Appellants answered the complaint and filed a motion to stay and enforce an arbitration agreement. The motion argued that upon her admission to Tallmadge, Jean had "initialed, signed, and entered into" the Agreement that encompassed the claims brought by the Estate. The motion further asserted that the Agreement was conscionable, enforceable, and complied with R.C. 2711.23.

{¶ 7} In their brief in opposition, the Estate argued that the Agreement was not enforceable because (1) appellants did not present sufficient evidence that Jean signed the Agreement, and (2) the Agreement was procedurally and substantively unconscionable. The Estate further argued that the Agreement did not apply to its wrongful-death claim and that the Agreement was signed by a different legal entity than the Tallmadge entity named in the complaint.

{¶ 8} Appellants filed supplemental support for their motion, consisting of an electronic-signature acknowledgement and consent form, the admission agreement, and a document labeled "OneSpan Sign Electronic Evidence Summary" that appellants referred to as the "audit history for admission paperwork."

{¶ 9} The trial court held a hearing on the motion over the course of two dates. During the first part of the hearing, the Estate presented the testimony of Lisa

West, M.D. ("West"), Ann Shock ("Shock"), and Dodds-Nalley. West was a forensic psychiatrist who had reviewed Jean's medical records. She opined that, with reasonable medical certainty, Jean did not have the capacity to enter into a contract at the time she signed the Agreement. Shock was Jean's sister and testified that she had visited Jean every day during the time of November 2023 through December 2023. She stated that at the time of her admission to Tallmadge, Jean was suffering confusion and hallucinations, she was unable to have deep conversations, and that at no point during that time was Jean "totally normal mentally."

{¶ 10} Following the testimony of West and Shock, there was a disagreement between counsel as to whether a witness was required to authenticate the records presented by appellants. Based upon an email between counsel that was shown to the court, it appeared that the parties had agreed that there would be no need for a witness to authenticate Jean's medical records. There was no agreement regarding the authentication of the other documents presented by appellants. The court questioned appellants' counsel as to why he did not have a witness testify regarding Jean's electronic signature and the claimed evidence thereof. The court recessed the hearing and stated that it would be reconvened at a later date to "allow [appellants] to bring whoever you think you need to bring so this court has all the information that it needs." (Tr. 46.)

{¶ 11} On the second day of the hearing, the Estate presented the testimony of Dodds-Nalley, who was Jean's niece and goddaughter. Dodds-Nalley testified that she had assisted Jean with doctor appointments and transportation to family

events, and she had attended family meetings regarding Jean, including a meeting on the day of Jean's admission to Tallmadge. She provided testimony regarding Jean's health at the time Jean had been admitted to Tallmadge, in particular Jean's cognitive issues and difficulty with her hearing and vision.

{¶ 12} Appellants did not present any witnesses but offered as exhibits the admission agreement, Jean's durable power of attorney, and various medical records relating to Jean's cognition. The "audit history for admission paperwork," also referred to as the "audit trail," that had been presented to the court as a supplemental exhibit to their motion was not offered as an exhibit at the hearing and was only ever mentioned by counsel.

{¶ 13} Following the hearing, the trial court issued an opinion and order denying the motion to stay and enforce the arbitration agreement. The court found that appellants had failed to prove that Jean had signed the agreement, noting that "no witness testified regarding the circumstances of [Jean's] alleged electronic signature." And even if they had proven her signing, the court determined that the Estate had presented clear and convincing evidence that Jean was not competent at the time of her admission and the signing of the agreement. Because Jean's capacity was diminished at the time of the signing, the court found that the Agreement was unconscionable.

{¶ 14} Appellants then filed the instant appeal.

## II. Law and Analysis

{¶ 15} There is a strong public policy in Ohio favoring arbitration of disputes. *Sebold v. Latina Design Build Group, L.L.C.*, 2021-Ohio-124, ¶ 8 (8th Dist.). However, although arbitration is favored, a party cannot be compelled to arbitrate a disagreement if the party did not agree to submit to arbitration. *Estate of Mary Battle-King v. Heartland of Twinsburg*, 2021-Ohio-2267, ¶ 10 (8th Dist.), citing *Council of Smaller Ents. v. McDonald & Co.*, 80 Ohio St.3d 661, 665 (1997). In an arbitration dispute, the appropriate standard of review is determined by the type of issues presented challenging the applicability of the arbitration provision. *Brownlee v. Cleveland Clinic Found.*, 2012-Ohio-2212 ¶ 8, citing *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543, ¶ 7 (8th Dist.).

{¶ 16} Generally, an abuse-of-discretion standard has been applied when there is a question as to whether a party has waived its right to arbitrate a given dispute, and a de novo standard has been applied when reviewing whether a party has agreed to arbitration or questions of unconscionability. *Gibbs v. Firefighters Community Credit Union*, 2021-Ohio-2679, ¶ 13 (8th Dist.), citing *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, ¶ 9 (8th Dist.), citing *McCaskey* at ¶ 7-8. "'The existence of a contract is a question of law that we review de novo.'" *Id.*, quoting *Vogel v. Albi, 2020*-Ohio-5242, ¶ 21 (1st Dist.), citing *N. Side Bank & Trust Co. v. Trinity Aviation, L.L.C., 2020*-Ohio-1470, ¶ 17 (1st Dist.). Here, in our review of the trial court's determination that there was no agreement to arbitrate, we will apply de novo standard of review. *See Hedeen* at ¶ 9. However, any factual findings

regarding the circumstances surrounding the making of the contract are reviewed with great deference. *See Taylor Bldg. Corp. Of Am. v. Benfield*, 2008-Ohio-938, ¶ 38.

{¶ 17} Appellants' motion to stay and enforce the Agreement was brought pursuant to R.C. Ch. 2711, which pertains to arbitration provisions in written agreements. Under Ohio law, an arbitration clause in a written agreement "'shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.'" *Hurley v. Betfair Interactive*, 2024-Ohio-5488, ¶ 9 (8th Dist.), quoting R.C. 2711.01(A).

{¶ 18} However, as this court has previously noted:

> [C]ourts may not force parties to arbitrate disputes if the parties have not entered into a valid agreement to do so. *See Boedeker v. Rogers* (1999), 136 Ohio App.3d 425, 429, 736 N.E.2d 955; *Painesville Twp. Local School Dist. v. Natl. Energy Mgt. Inst.* (1996), 113 Ohio App.3d 687, at 695, 681 N.E.2d 1369. As the Supreme Court of the United States has stressed, "arbitration is simply a matter of contract between the parties; it is a way to resolve disputes — but only those disputes — that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. 938, 943, 131 L.Ed.2d 985, 115 S. Ct. 1920.

*Maestle v. Best Buy Co.*, 2005-Ohio-4120, ¶ 10 (8th Dist.). "[P]arties cannot be coerced into arbitrating a claim, issue, or dispute 'absent an affirmative "contractual basis for concluding that the party agreed to do so."'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 660 (2022), quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 177 (2019), quoting *Stolt-Nielsen, S.A. v. AnimalFeeds Internatl. Corp.*, 559 U.S. 662, 684 (2010).

{¶ 19} R.C. 2711.03, titled "Enforcing arbitration agreement," governs petitions to compel arbitration. R.C. 2711.03(A) allows a party that claims to be aggrieved by another party's alleged failure to comply with an arbitration agreement to petition a court of common pleas "for an order directing that the arbitration proceed" and states that the court "shall hear the parties."

{¶ 20} "[W]here a party has filed a motion to compel arbitration pursuant to R.C. 2711.03, 'the court must, in a hearing, make a determination as to the validity of the arbitration clause.'" *Costin v. Midwest Vision Partners, L.L.C.*, 2024-Ohio-463, ¶ 20 (8th Dist.), quoting *Marks v. Morgan Stanley Dean Witter Commercial Fin. Servs.*, 2008-Ohio-1820, ¶ 21 (8th Dist.), citing *Maestle* at ¶ 18. Here, the trial court held a hearing and determined the Agreement to be invalid.

{¶ 21} The Ohio Supreme Court has set forth the following principles guiding a court's determination of whether to order arbitration pursuant to a written agreement: (1) whether the parties agreed to submit any dispute to arbitration; (2) whether the agreement creates an obligation to arbitrate a particular grievance; (3) when deciding if the parties agreed to submit a particular grievance to arbitration, the court is not to rule on the potential merits of underlying claims; and (4) where an arbitration provision is contained in a contract, there is a presumption of arbitrability. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 10-14, citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661 (1998).

{¶ 22} The Estate asserted that Jean did not agree to submit her claims to arbitration and that the arbitration provision was not valid. "When there is a question as to whether a party has agreed to an arbitration clause, there is a presumption against arbitration." *Maestle* at ¶ 22, citing *Spalsbury v. Hunter Realty, Inc*., 2000 Ohio App. LEXIS 5552 (8th Dist. Nov. 30, 2000), citing *Council of Smaller Ents.* "An arbitration agreement will not be enforced if the parties did not agree to the clause." *Id.*, citing *Henderson v. Lawyers Title Ins. Corp*., 2004-Ohio-744 (8th Dist.), citing *Harmon v. Phillip Morris Inc*., 120 Ohio App.3d 187, 189 (8th Dist. 1997).

{¶ 23} Courts apply ordinary principles that govern the formation of contracts to determine whether a party has agreed to arbitrate. *Seyfried v. O'Brien*, 2017-Ohio-286, ¶ 19 (8th Dist.), citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "'A valid arbitration agreement, like any contract, requires an offer and acceptance that is supported by consideration and is premised on the parties' meeting of the minds as to the essential terms of the agreement.'" *Rousseau v. Setjo, L.L.C.*, 2020-Ohio-5002, ¶ 8 (8th Dist.), quoting *Corl v. Thomas & King*, 2006-Ohio-2956, ¶ 8 (10th Dist.), citing *Miller v. Lindsay-Green, Inc*., 2005-Ohio-6366, ¶ 55 (10th Dist.). Pursuant to the plain language of R.C. Ch. 2711, prior to making any determination regarding the arbitrability of the parties' claims, a court must first determine whether the written arbitration agreement is enforceable under basic contract precepts. *Gibbs*, 2021-Ohio-2679 at ¶ 14 (8th Dist.); *see also Benjamin v. Pipoly*, 2003-Ohio-5666, ¶ 31 (10th Dist.).

{¶ 24} Appellants argue that Jean signed the Agreement electronically. All of the documents allegedly signed by Jean upon her admission to Tallmadge were electronic signatures that stated "E-SIGNED by Jean Vasquez" on the resident's signature line, along with the date and time. There was no image of an actual digital signature executed by Jean. Appellants presented to the court an electronic signature acknowledgment and consent form, which was also signed electronically.

{¶ 25} To demonstrate the validity of Jean's electronic signature, appellants referred the court to the audit trail that had been presented as a supplemental exhibit to their motion. Appellants argued that this audit trail verified Jean's electronic signature by showing the precise time that she signed the Agreement.

{¶ 26} An "electronic signature" is defined in R.C. 1306.01(H) as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." R.C. 1306.08 provides:

> (A) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature is attributable.
>
> (B) The effect of an electronic record or electronic signature attributed to a person under division (A) of this section shall be determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

{¶ 27} The act of electronically signing an agreement generally is sufficient to demonstrate assent to the agreement. *Wolfe v. J.C. Penney Corp.*, 2018-Ohio-3881,

¶ 17 (10th Dist.). "A signature on a contract creates a rebuttable presumption that it was validly executed." *AC Asset, L.L.C. v Mitchell*, 2022-Ohio-1763, ¶ 32 (8th Dist.), citing *R.C. Olmstead, Inc. v. GBS Corp.*, 2009-Ohio-6808, ¶ 45 (7th Dist.), citing *Cardinal Constr. Co. v. Americare Corp.*, 1986 Ohio App. LEXIS 6579 (3d Dist. Apr. 28, 1986). "'A rebuttable presumption is a presumption which is not conclusive and which may be contradicted by evidence.'" *Id.*, quoting *Forbes v. Midwest Air Charter, Inc.*, 86 Ohio St.3d 83, 85 (1999). This rebuttable presumption is unchanged by the use of an electronic signature. *Id.,* citing *Bell v. Hollywood Entertainment Corp.,* 2006-Ohio-3974, ¶ 16, fn. 3 (8th Dist.) (noting that a contract may not be denied legal effect or enforceability because an electronic signature was used).

{¶ 28} Indeed, there are a number of cases where this court and other Ohio courts have enforced agreements with electronic signatures. However, additional evidence had been offered as to the circumstances of the electronic signatures, particularly in cases where the validity of the signature was in dispute. *See, e.g., Ardery v. Bedford*, 2025-Ohio-278, ¶ 16 (8th Dist.) (presented affidavit of office manager attesting that he had witnessed plaintiff electronically sign the agreement); *Maddox v. Indochino Apparel United States*, 2025-Ohio-2227, ¶ 14 (8th Dist.) (presented affidavit of operations manager, who attested that Maddox had electronically executed the offer letter, acknowledging the arbitration provision therein); *Dozier v. Credit Acceptance Corp.*, 2019-Ohio-4354, ¶ 3 (8th Dist.) (Plaintiff had executed declaration acknowledging that he was given an opportunity

to review a paper version of the contract prior to executing it, and had "physical control of the keyboard, mouse or other device when he executed the contract."); *McCreary v. Taylor Cadillac*, 2025-Ohio-2562, ¶ 16 (3d Dist.) (Affidavit was presented in which company representative averred that "he had reviewed the arbitration agreement with McCreary and that she had authorized him to place her electronic signature onto this document."); *Ercevik v. Don Wood Hyundai L.L.C.*, 2025-Ohio-633, ¶ 4 (4th Dist.) (company submitted electronically signed sales contract along with document that governed the signature process, which had been signed nonelectronically).

{¶ 29} To rebut the presumption of a validly executed contract, the party denying the signature must introduce supportive evidence that, if believed, would be sufficient to permit the trier of fact to find in his or her favor. *Bates & Springer, Inc. v. Stallworth*, 56 Ohio App.2d 223, 233 (8th Dist. 1978) (construing R.C. 1303.36(A) and the validity of a signature on a promissory note). Here, the Estate submitted the affidavit of Dodds-Nalley, wherein she stated that "[a]t no point before, during, or after the admission meeting . . . did Jean L. Vasquez communicate to me, in any way, that she was presented and signed any arbitration agreement or any document(s) concerning that subject matter." (Estate's brief in opposition, exhibit No. 4, ¶ 19.) Dodds-Nalley further averred that Jean "did not mention, acknowledge, or otherwise make it known that she had the knowledge of ever signing an arbitration agreement." (*Id.* at ¶ 25.) In addition, Dodds-Nalley

testified that Jean did not discuss an arbitration agreement with her, which she stated was unusual. (Tr. 102.)

{¶ 30} The Estate further argued that Jean did not have the capacity to enter into a contract. At the hearing, it presented medical records and expert testimony to demonstrate that Jean would have lacked the capacity to sign an arbitration agreement at the time of her admission.

{¶ 31} Once the Estate submitted evidence denying Jean's electronic signature, appellants had the burden to produce evidence to the contrary. *See AC Asset, L.L.C. v. Mitchell,* 2022-Ohio-1763 at ¶ 33 (8th Dist.) (noting that when a party presents evidence to rebut the presumption, the burden then remains with the party seeking to enforce the agreement to establish that the signature was genuine), citing *R.C. Olmstead, Inc. v. GBS Corp.,* 2009-Ohio-6808 (7th Dist.) ("When [a party] offers evidence to rebut the presumption," "the presumption drops out and the burden of proof remains on [the party seeking to enforce].").

{¶ 32} Appellants did not provide any evidence that would allow the court to determine that the electronic signature was legitimate or that it constituted valid acceptance of the Agreement. There was no testimony or exhibits presented as to how Jean's electronic signature was effected, what Jean was told about electronically signing the documents, or how the Agreement was presented to Jean for her signature.

{¶ 33} The authenticity of Jean's electronic signature could have been established through the affidavit or testimony from the employee who worked with

Jean to execute the admission documents. If such a person were not available, appellants could have, at the very least, presented evidence or testimony regarding the general process utilized by Tallmadge in presenting documents to a resident upon admission and obtaining electronic signatures.

{¶ 34} Instead, appellants chose to stand solely on the audit trail as indisputable evidence demonstrating the validity of Jean's electronic signature. However, this document was far from conclusive, and it was by no means self-explanatory. Appellants did not direct the trial court's attention to any documentary evidence that would clearly explain the meaning of the audit trail — what the document demonstrated, how to interpret it, or what particular aspects reflected any indicia of reliability of the proffered electronic signature on the Agreement. While it is appropriate for counsel to stipulate that documents would be authenticated without the testimony of a witness, this does not alleviate a party's obligation to explain the meaning of documents offered as exhibits and apprise the court of their evidentiary weight through testimony or other evidence.

{¶ 35} The only discussion of the audit trail occurred during counsel's arguments at the hearing; however, it is well established that "statements of counsel are not evidence." *Hersh v. Cuyahoga Cty. Bd. of Revision*, 2020-Ohio-3596, ¶ 15 (8th Dist.), citing *Corporate Exchange Bldgs. IV & V, Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 299 (1998).

{¶ 36} Accordingly, we find that the Estate rebutted the presumption that Jean had electronically signed the Agreement, and appellants failed to meet their

corresponding burden of demonstrating the validity of her electronic signature. Consequently, the Agreement was unenforceable. The trial court did not err in denying appellants' motion to stay and enforce the Agreement.

{¶ 37} Appellants' sole assignment of error is overruled, and the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
TIMOTHY W. CLARY, J., CONCUR