JOURNAL ENTRY and OPINION
{¶ 1} After lengthy negotiations in a contract dispute, plaintiff Convenient Food Mart, Inc. and defendant Countywide Petroleum Co. told the court that they had reached a settlement. The parties read the terms of the settlement into the record and informed the court that they would submit the settlement to the court in writing the following day. Convenient then disputed several points contained in the proposed written settlement, primarily whether the settlement agreement should be reduced to judgment and immediately filed or "held in abeyance" and not filed unless and until one of the parties breached the settlement. When the parties told the court that they could not agree in final, written form, the court conducted a hearing on the differences, and ultimately journalized a judgment entry that contained, among other things, the terms set forth by the parties in open court. Convenient appeals, primarily arguing that the court erred by finding that the parties had a meeting of the minds sufficient to give rise to an enforceable agreement to settle their disputes.
 I {¶ 2} Although the civil courts exist to decide disputes between parties, they recognize that voluntary settlement of those disputes is favored for both private and public interests. The private interests promoted by setttlement are economic efficiency by capping litigation costs and permitting the parties to devote their resources and attention to more productive endeavors. The public interests are public interests are judicial economy and efficiency by eliminating the necessity for further judicial consideration of the merits of the settled case. See, e.g., Federal Data Corp. v. SMS Data Products Group, Inc. (C.A.Fed., 1987), 819 F.2d 277, 280. Settlement eliminates the need for courts to expend their resources to resolve the questions raised by the case, as well as the need to conduct any further proceedings (including, in many cases, a trial) that could be necessary on remand.
 {¶ 3} In addition to these public and private interests, the just resolution of disputes by agreement can be more satisfying to the parties: "One of the fundamental principles of judicial administration is that, in most cases, the absolute result of a trial is not as high a quality of justice as is the freely negotiated, give a little, take a little settlement." Hubert L. Will et al., The Role of the Judge in the Settlement Process (1976), 75 F.R.D. 203.
 {¶ 4} A settlement agreement is a contract, and the courts review questions arising from them under the same standards of review used in contract cases. In Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, the supreme court stated at ¶ 15:
 {¶ 5} "`To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear,' and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists. Rulli v. Fan Co. (1997),79 Ohio St.3d 374, 376, 377, 683 N.E.2d 337. However, `all agreements have some degree of indefiniteness and some degree of some degree of uncertainty. In spite of its defects, language renders a practical service. In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make.' 1 Corbin on Contracts (Perillo Rev.Ed. 1993) 530, Section 4.1."
 {¶ 6} Nevertheless, in Rulli v. Fan Company, 79 Ohio St.3d 374, 376,1997-Ohio-380, the supreme court observed that:
 {¶ 7} "* * * courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants. Though we encourage the resolution of disputes through means other than litigation, parties are bound when a settlement is reduced to final judgment. Since a settlement upon which final judgment has been entered eliminates the right to adjudication by trial, judges should make certain the terms of the agreement are clear, and that the parties agree on the meaning of those terms."
 {¶ 8} To that end, "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." Id. at syllabus.
 II {¶ 9} On the day of the scheduled trial, the parties told the court that they had, after much discussion, reached a settlement. Convenient's counsel outlined the terms of the settlement for the court:
 {¶ 10} "I'm going to articulate, for the Court, for counsel, for the parties who are present and for the record, what we believe the terms of the comprehensive agreement to be, with the understanding that there will be a written settlement agreement to be signed that will embody these five points."
 {¶ 11} The fifth point was that "a judgment entry be stayed and, in essence, held in abeyance during performance of these four terms, as I've outlined them. And, subject to being effectuated only after the expiration of ten business days after any breach of these terms by non-payment."
 {¶ 12} Countywide's counsel agreed to the terms, and then the individuals involved in the litigation gave their personal agreement to the terms as expressed by Convenient's counsel.
 {¶ 13} Six days later, the parties appeared before the court and Convenient informed the court that they could not reach an agreement on the fifth point. Convenient told the court that it had intended for a judgment entry to be prepared, but not filed, unless and until there had been nonperformance under the settlement agreement. Countywide expressed the opposite understanding — that a judgment entry would immediately issue. The impasse caused by Convenient's position on the judgment entry was a deal breaker — it refused to sign the settlement agreement. When the court pressed Convenient to explain why a judgment entry could not issue, Convenient replied that a judgment entry would alert others in the field to the financial terms of the settlement and Convenient feared that those others would take advantage of Convenient's marginal financial marginal financial stability for their own personal gain.
 {¶ 14} After hearing arguments by counsel, the court signed a judgment entry which incorporated a mutual settlement agreement and release containing the terms of the settlement as previously read into the record. Although there were signature lines for the parties, none of the parties signed the mutual settlement agreement and release.
 III {¶ 15} This much is clear — the parties did not sign a settlement agreement, so the question comes down to whether the oral statement made by Convenient's counsel, agreed to by all of the individuals involved in the case, sufficiently set forth the requisite elements of a contract necessary to bind the parties. As a matter of law, we think they did.
 {¶ 16} In Spercel v. Sterling Industries, Inc. (1972), 31 Ohio St.2d 36, paragraph one of the syllabus states, "[w]here the parties in an action for an accounting and royalties voluntarily enter into an oral settlement agreement in the presence of the court, such agreement constitutes a binding contract."
 {¶ 17} As we earlier noted, the court conducted a hearing after the parties were unable to produce a signed settlement agreement. It was not an "evidentiary" hearing in the sense that the parties presented evidence and witnesses, but the court permitted counsel for Convenient to explain its position at such length (the transcript of the hearing runs over 100 pages) that it can hardly be said that Convenient lacked the opportunity to state its case. In its case. In fact, the court heard from some of the individuals involved in the case. Granted, the court did not give advance notice that it would be conducting a hearing (the parties apparently believed that trial was to commence), but we see no prejudice. As Convenient continues to argue, the journalization of the settlement agreement continued to be the sticking point. The court heard all of the parties speak on that issue, and Convenient does not now say that it had any other evidence to offer or would have explained its position in more depth had it been properly noticed that an evidentiary hearing would be held. We therefore reject Convenient's argument that the court did not hold a hearing.
 IV {¶ 18} The remaining issue is whether, at the time they orally recited the terms of the settlement to the court, the parties manifested a meeting of the minds on the issue of journalizing the judgment entry sufficient to form a contract.
 {¶ 19} The term "meeting of the minds," while seeming subjective on its face, is far more objective in application than it might appear:
 {¶ 20} "In early nineteenth-century America, courts and text writers developed the notion that the basis of contract law was the actual `will' or `meeting of minds' of the parties, which certainly suggests a more subjective approach to contract interpretation. Interestingly, however, the interpretation of contracts during that period continued the common-law tradition of ascertaining the intentions — now the `minds' — of the parties by examining the common examining the common meaning of the words used in the agreement. For example, American courts continued to adhere to the common-law parol evidence rule, by which evidence of the parties' subjective intentions unexpressed in the written terms of an integrated agreement was regarded as irrelevant to the interpretation of the agreement. Indeed, more than one observer has noted the irony that the ascendancy of the `will' theory of contract in the early nineteenth century was accompanied by an increasingly `objective' approach to interpretation." Landau, The Intended Meaning of "Legislative Intent" and Its Implications for Statutory Construction in Oregon, 76 Oregon L.Rev. 47, 80 (footnotes omitted).
 {¶ 21} Ohio law continues to hold that the parties bind themselves by the plain and ordinary language used in a contract unless those words lead to a manifest absurdity. See Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, paragraph two of the syllabus; Shifrin v.Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638, 1992-Ohio-28. This is an objective interpretation of contractual intent based on the words the parties chose to use in the contract. See Kelly v. Medical Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Convenient is thus bound to the terms of the settlement expressed in open court unless they would lead to an absurd result.
 {¶ 22} Convenient told the court that "a judgment entry be stayed and, in essence, held in abeyance during performance of these four terms, as I've outlined them. And, subject to being effectuated effectuated only after the expiration of ten business days after any breach of these terms by non-payment."
 {¶ 23} The term "judgment entry" is a term of art in the law. By definition, a judgment entry must be filed with the clerk of the court; that is, journalized, to be effective. Civ.R. 58(A) states:
 {¶ 24} "Subject to the provisions of Rule 54(B), upon a general verdict of a jury, upon a decision announced, or upon the determination of a periodic payment plan, the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it upon the journal. A judgment is effective only when entered bythe clerk upon the journal." (Emphasis added).
 {¶ 25} The requirement that to be effective, a judgment must be journalized, is very longstanding in the law. "A court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum." Schenley v. Kauth (1953), 160 Ohio St. 109, paragraph one of the syllabus; State ex rel. Worcester v. Donnellon
(1990), 49 Ohio St.3d 117, 118. That being the case, the court could not effectively reduce the settlement agreement to "judgment" without first journalizing it. Absent journalization, there would be no judgment, and consequently, nothing for the court to enforce in the event of a subsequent breach.
 {¶ 26} Had Convenient prevailed on its literal position that the "judgment" entry be placed in a drawer and kept there until a breach of the settlement occurred, the case would not have been resolved. Of course, the parties could have settled and dismissed the matter without the court's participation, but the parties obviously intended that the court be involved in enforcing the terms of the settlement. And if they wanted the court's involvement, they had to agree to have the judgment entry journalized. Convenient's later insistence that a judgment entry be issued, but not filed, is a legal oxymoron and the court did not err by treating it as such and holding Convenient to the plain meaning of the terms expressed in open court.
 {¶ 27} Convenient argues that there was no meeting of the minds due to several instances in open court where it used prospective language suggesting that a signed agreement would be forthcoming — particularly its representation to the court that a "written" agreement would follow. It is true that the parties spoke prospectively in terms of preparing a written agreement. But there are enough instances of definite language used by Convenient to suggest finality in the primary terms of the agreement. And it bears noting that, although Convenient had contested several aspects of its understanding at the hearing, in this appeal it only complains about the journalization of the settlement agreement.
 {¶ 28} Having found that the court did not err by concluding that the terms of the fifth point necessarily required journalization of the settlement agreement, all contested elements of this appeal of this appeal have been resolved. The emergency stay of execution of judgment entered by this court on May 27, 2004, Motion No. 360388, will be lifted upon journalization of this judgment entry.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Sweeney, J., concur.