JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants, Best Buy Co. ("Best Buy"), Best Buy LLP, and Bank One, N.A. ("Bank One") (collectively "appellants"), appeal the trial court's denial of their motion to stay proceedings under R.C. 2711.02. Finding no merit to the appeal, we affirm.
 A Brief History {¶ 2} In July 1995, Shawn Maestle applied for and was granted a Best Buy credit card account with Bank One, and in February 1997, Bonnie Simmons applied for and was granted a Best Buy credit card account with Bank One. Two years later, in 1999, Bank One contributed its Best Buy credit card portfolio to a joint venture managed by GE Capital Consumer Card Company ("GE Capital"). In July 1999, GE Capital mailed to all Best Buy credit cardholders a notice of change in terms as well as the new terms and conditions, which included a comprehensive arbitration provision. The cardholders were advised to destroy their credit cards if they did not accept the change.
 {¶ 3} Plaintiffs-appellees Maestle and Simmons (collectively "appellees") brought this putative class action against appellants, alleging breach of contract, fraud and violations of the Ohio Consumer Sales Practices Act, stemming from a "no interest" financing allegedly offered by Bank One to qualifying Best Buy customers. The complaint alleges that appellees were improperly assessed finance and interest charges on their Best Buy credit cards issued by Bank One. Appellees requested certification of a class on their claims.
 {¶ 4} Appellants filed a motion, pursuant to R.C. 2711.02, to stay proceedings pending arbitration and to dismiss, arguing that appellees were contractually obligated to arbitrate their disputes with appellants. Appellants contended below and on appeal that they are third-party beneficiaries of the arbitration provision added by GE Capital. The trial court denied the stay without opinion.
 {¶ 5} Appellants appealed. In Maestle v. Best Buy Co.,
Cuyahoga App. No. 79827, 2002-Ohio-3769, this court reversed the trial court's decision and remanded the case, on a procedural issue, holding that R.C. 2711.03 applied, which required a hearing on a R.C. 2711.02 motion to stay.
 {¶ 6} The Supreme Court of Ohio heard the case by way of a certified conflict. See Maestle v. Best Buy Co.,100 Ohio St.3d 330, 2003-Ohio-6465. The Supreme Court of Ohio reversed and remanded the case, holding that R.C. 2711.03 does not apply to a R.C. 2711.02 motion. The case was remanded to this court to decide the case on the merits.
 Assignment of Error {¶ 7} "The trial court erred by denying Appellants' Joint Motion to Stay Pending Arbitration and to Dismiss."
 Standards of Review {¶ 8} We review a trial court's decision to deny a motion to stay pursuant to R.C. 2711.02 for an abuse of discretion. MRKTechnologies, Ltd. v. Accelerated Systems Integration, Inc.,
Cuyahoga App. No. 84747, 2005-Ohio-30. A court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. Id. However, we use a de novo standard of review when reviewing questions of law such as contract interpretation.Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313,1996-Ohio-393; Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus.
 Arbitration {¶ 9} Both Ohio and federal courts encourage arbitration to settle disputes. Kelm v. Kelm (1993), 68 Ohio St.3d 26, 27;Southland Corp. v. Keating (1984), 465 U.S. 1, 10. Further, our General Assembly favors arbitration. Indeed, R.C. 2711.02
requires a court to stay an action if the issue involved falls under an arbitration agreement, and according to R.C. 2711.03, a party to an arbitration agreement may seek an order directing the other party to proceed to arbitration. ABM Farms v. Woods,81 Ohio St.3d 498, 1998-Ohio-612.
 {¶ 10} Nevertheless, courts may not force parties to arbitrate disputes if the parties have not entered into a valid agreement to do so. See Boedeker v. Rogers (1999),136 Ohio App.3d 425, 429; Painesville Twp. Local School Dist. v. Natl.Energy Mgt. Inst. (1996), 113 Ohio App.3d 687, at 695. As the Supreme Court of the United States has stressed, "arbitration is simply a matter of contract between the parties; it is a way to resolve disputes — but only those disputes — that the parties have agreed to submit to arbitration." First Options of Chicago,Inc. v. Kaplan (1995), 514 U.S. 938, 943. When a party requests a stay under R.C. 2711.02, the first issue before the trial court is whether there is a valid written agreement to arbitrate.Reedy v. The Cincinnati Bengals, Inc. (2001),143 Ohio App.3d 516, 520. Courts apply state contract law to determine whether a binding agreement to arbitrate exists. First Options ofChicago, 514 U.S. at 944.
 Dispute at Issue {¶ 11} Appellees are customers of Best Buy who each entered into a signed, written credit card agreement with Bank One for a Best Buy credit card. The original agreement did not contain an arbitration provision. Further, the "Terms and Conditions," which were incorporated into the signed agreement, did not contain an arbitration provision.
 {¶ 12} Appellees' initial applications for credit from Bank One, however, state that he/she "agree[s] to abide by the terms of the account Agreement and Disclosure Statement which shall be issued by Bank One from time to time." The agreement and disclosure statement provides that the terms may be changed or amended "upon fifteen (15) days prior written notice if required by law."
 {¶ 13} Appellants are seeking enforcement of an arbitration provision that was added by a subsequent company, GE Capital. GE Capital is not a party to the suit.[1] Appellants argue that although they are not parties to the GE Capital agreement, they are intended third-party beneficiaries of this arbitration provision, because Bank One is a predecessor of GE Capital and Best Buy is a retailer. Appellants point to this provision in the agreement: "As solely used in this Arbitration Provision, the terms `we' and `us' shall for all purposes mean GE Capital Consumer Card Co.; all of its parents, wholly or majority owned subsidiaries, affiliates, predecessors, successors, and assigns; retailers; and all independent contractors, agents, employees, directors and representatives."
 {¶ 14} Appellants argue, inter alia, that an arbitration clause may be unilaterally added to a cardholder agreement through the change-in-terms provision so long as they follow the proper procedure. Appellees contend that the change-in-terms provision does not contemplate wholly new terms and therefore the arbitration clause is invalid and unenforceable.
 Legal Authority {¶ 15} Ohio courts have not directly addressed whether an arbitration clause may be unilaterally added to a cardholder agreement through a change-in-terms provision when the initial agreement does not contain any terms regarding dispute resolution. Other courts, however, have reached conflicting conclusions. There are a number of cases that allow the addition of an arbitration clause pursuant to a change-in-terms provision, many of which rely on state statutes that specifically authorize credit card companies to make unilateral changes to the underlying credit card agreement. See, e.g., Fields v. Howe
(S.D. Ind. 2002), 2002 U.S. Dist. LEXIS 4515, No. IP-01-1036-C-B/S (unilateral addition of arbitration clause authorized by Delaware Code); SouthTrust Bank v. Williams (Ala. 2000), 775 So.2d 184 (Alabama Code expressly provides that original agreement may be amended by lender, based on apparent acquiescence of cardholder, with or without a change-in-terms clause). There are, however, a number of courts that have enforced arbitration clauses without relying on explicit statutory authorization. See, e.g., Hutcherson v. Sears Roebuck Co. (2003), 342 Ill.App.3d 109 (under Arizona law, the unilateral addition of the arbitration clause was not procedurally unconscionable); Marsh v. First USA Bank, N.A.
(N.D. Texas 2000), 103 F.Supp.2d 909 (arbitration agreement added by way of amendment to credit agreement is enforceable). Nevertheless, there are several courts that have not enforced the arbitration clauses. See, e.g., Stone v. Golden Wexler Sarnese, P.C., et al. (E.D.N.Y. 2004), 341 F.Supp.2d 189
(change-in-terms provision did not cover the addition of an arbitration clause); Discover Bank v. Shea (N.J.Super.Ct. 2001), 827 A.2d 358 (attempt to unilaterally amend its original cardholder agreement to include an arbitration clause is ineffective).
 {¶ 16} Appellants argue that this case is similar to BankOne, N.A. v. Coates (S.D. Miss. 2001), 125 F.Supp.2d 819, which enforced the arbitration clause that was added by amendment. InCoates, Bank One filed a motion to compel arbitration. The bank mailed its cardholders a notice of a proposed arbitration clause with a one-month "opt-out" period. Coates admitted that he did not reject the amendment, but argued, inter alia, that the arbitration provision was not binding because the change-in-terms provision did not authorize the addition of an arbitration clause and therefore he could not be bound by it. Furthermore, Coates argued that the agreement was in substance unfair and unconscionable. The court treated this argument as raising a claim of procedural unconscionability. The court found that the notification of the impending amendment used clear language and a legible, though small, font. The court concluded that Coates was bound by the arbitration clause because the original agreement, which Coates signed, authorized the bank to make amendments without limitation and the bank complied with the change-in-terms provision. The court noted, "[i]ndeed, Ohio banking statutes specifically authorize amendments * * *." Id. at 831, citing R.C.1109.20(D).
 {¶ 17} Appellees urge this court to follow Badie v. Bank ofAmerica (1998), 79 Cal.Rptr.2d 273. Unlike the court inCoates, the Badie court did not analyze this issue in terms of procedural unconscionability. Framing the issue as one of basic contract interpretation, the court analyzed whether the change-in-terms provision authorized the addition of the arbitration clause.
 {¶ 18} In Badie, the bank added an arbitration clause to its credit card agreements, giving notice of the addition in the body of a half-page bill stuffer mailed to cardholders with their monthly statement. The bank made the addition pursuant to a change-in-terms provision that permitted the bank to alter or terminate terms or conditions in the agreement upon notice, if required by law, to cardholders. The bank did not offer an opportunity to reject the addition of the arbitration clause. The bank argued that its actions were simply a type of contract modification and so long as it followed the proper procedure required in the change-in-terms provision, the arbitration clause was valid and enforceable. The court rejected the bank's argument, noting that standard contract modification cases involve changes that were "specifically identified in the original contracts as changes that might be made in the future under certain circumstances." Id. at 281. The court held that the arbitration clause was not binding because it was not the type of change contemplated by the parties when they signed the original contract.
 {¶ 19} For the following reasons, this court agrees with the analysis and conclusion drawn in Badie and respectfully disagrees with the analysis and conclusion reached in Coates.
 Decision and Analysis {¶ 20} The court in Coates cites R.C. 1109.20(D), which states, "Subject to any requirements under applicable federal law, a bank and a borrower may specify in their agreement any terms and conditions for modifying or amending the agreement." We cannot, however, agree with the Coates court's seeming proposition that a party with a unilateral right to modify a contract has the right to make any kind of change whatsoever as long as the specified procedure is followed. Moreover, the heading for R.C. 1109.20 is "Allowable interest rate, fees and charges; governing law." Nowhere in the title or section does R.C. 1109.20 address adding entirely new terms not contemplated in the original agreement.
 {¶ 21} Unlike Delaware's statute, which expressly permits banks to amend credit card agreements to add arbitration clauses "whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties," R.C.1109.20(D) does not expressly permit amendments for terms not contemplated in the original agreement. Del. Code Ann. tit. 5, Section 952(a); Joseph v. M.B.N.A. America Bank, N.A.,148 Ohio App.3d 660, 2002-Ohio-4090. This court finds that the material issue is not whether the process of the amendment was unconscionable, as suggested in Coates, but whether the appellants had the authority to undertake such an amendment in the first place. See, also, Stone v. Golden Wexler Sarnese,P.C., et al. (E.D.N.Y. 2004), 341 F.Supp.2d 189, 196. Therefore, the threshold question is whether the parties agreed to arbitrate. More specifically, did the change-in-terms provision in the Bank One credit card agreement authorize the addition of an arbitration clause?
 {¶ 22} When there is a question as to whether a party has agreed to an arbitration clause, there is a presumption against arbitration. Spalsbury v. Hunter Realty, Inc., et al. (Nov. 30, 2000), Cuyahoga App. No. 76874, citing Council of SmallerEnters. v. Gates, McDonald Co. (1997), 80 Ohio St.3d 661. An arbitration agreement will not be enforced if the parties did not agree to the clause. Henderson v. Lawyers Title InsuranceCorp., Cuyahoga App. No. 82654, 2004-Ohio-744, citing Harmon v.Phillip Morris Inc. (1997), 120 Ohio App.3d 187, 189.
 {¶ 23} The issue of whether or not a party has agreed to arbitrate is determined on the basis of ordinary contract principles. Kegg v. Mansfield (Jan. 31, 2000), Stark App. No. 1999CA00167, citing Fox v. Merrill Lynch Co., Inc. (1978),453 F.Supp. 561. See, also, Council of Smaller Enters., supra;ATT Technologies, Inc. v. Communications Workers of America
(1986), 475 U.S. 643. In order to have a valid contract, there must be a "meeting of the minds" on the essential terms of the agreement, which is usually demonstrated by an offer, acceptance, and consideration. Reedy v. The Cincinnati Bengals, Inc.
(2001), 143 Ohio App.3d 516, 521. An offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Id. Further, the essential terms of the contract, usually contained in the offer, must be definite and certain. Id.
 {¶ 24} "Ohio law continues to hold that the parties bind themselves by the plain and ordinary language used in the contract unless those words lead to a manifest absurdity."Convenient Food Mart, Inc. v. Countrywide Petroleum Co., etal., Cuyahoga App. No. 84722, 2005-Ohio-1994. This is an objective interpretation of contractual intent based on the words the parties chose to use in the contract. Id., citing Kelly v.Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 25} In Nationwide Mutual Insurance Co. v. Marsh (1984),15 Ohio St.3d 107, Nationwide and its customer, Marsh, entered into a signed, written agreement for auto insurance. The signed document contained no details or terms. The parties intended that the formal written policy issued thereafter would constitute the contract. There was no indication, however, that the subsequently issued policy would contain an arbitration provision. The Supreme Court of Ohio stated, "the terms of the policy must be mutually agreed-upon to be effective, in accordance with contract principles." Id. at 109. The Court found that the arbitration clause was not part of the policy because there was no "meeting of the minds" as to its inclusion at the inception of the contract.
 {¶ 26} In the instant case, GE Capital sought to add an entirely new term to the original account agreements, which did not include any provision regarding the method or forum for resolving disputes. The question is what types of terms the contract allowed the bank to change, not whether the bank could add a new term. In other words, did the cardholders agree ahead of time to be bound by any term the appellants might choose to impose in the future?
 {¶ 27} Here, the amendment provision in the original credit card agreement read: "Amendment: We may change or amend the terms of this Agreement upon fifteen (15) days prior written notice if required by law. Any change of amended fee, charge, interest rate, FINANCE CHARGE, ANNUAL PERCENTAGE RATE, or minimum payment amount, whether increased or decreased, may be effective to both the outstanding Account Balance and future transactions."
 {¶ 28} Appellees could not anticipate that appellants, let alone a new third party, would amend the agreement to add an arbitration clause, since the amendment provision referenced only changes to payments, charges, fees and interest. Furthermore, nowhere in the contract is there a clause addressing forums of dispute. Therefore, we find that Bank One did not specify in their agreement whether they could change a customer's forum of dispute resolution in accordance with R.C. 1109.20(D). Hence, there was no "meeting of the minds" as to inclusion of the arbitration clause at the inception of the contract. See Marsh,
supra.
 {¶ 29} The trial court did not abuse its discretion when it denied the stay; therefore, we conclude that the arbitration clause is invalid and unenforceable. Appellants' sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Celebrezze, Jr., J., concur.
[1] GE Capital is not a party to the suit; however, it appears from the exhibits that it was the lender extending the credit at the time of the alleged misconduct.