[Cite as *Yoby v. Cleveland*, 2025-Ohio-5853.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CLINT YOBY, ET AL.,                          :

    Plaintiffs-Appellees,          :

                                No. 114890

    v.                                        :

CITY OF CLEVELAND, ET AL.,                   :

    Defendants-Appellants.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** December 31, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-15-852708

---

### *Appearances:*

Merriman Legando & Williams, LLC, Tom Merriman, and Drew Legando; Bashein & Bashein Co. LPA, W. Craig Bashein, and John Hurst; Scott+Scott LLP and Geoffrey M. Johnson; Meyers, Roman, Frieberg & Lewis and Peter Turner; Brakey Law LLC and Carolyn Brakey, *for appellees*.

Zashin & Rich Co., L.P.A., Stephen S. Zashin, Lisa A. Kainec, and Rose A. Hayden; Carpenter Lipps LLP, Jeffrey A. Lipps, Kimberly W. Bojko, and Angela Paul Whitfield; Mark Griffin, Cleveland Law Director, and Delante Spencer Thomas, Chief Assistant Director of Law, *for appellant* City of Cleveland.

EILEEN T. GALLAGHER, J.:

**{¶ 1}** Appellant City of Cleveland ("City") appeals the judgment of the trial court denying its motion to stay and compel arbitration. After a thorough review of the applicable law and facts, we find that there was no valid agreement to arbitrate the within action. The trial court did not err in denying the City's motion to stay and compel arbitration, and we affirm the judgment of the trial court and remand for further proceedings.

## I. Factual and Procedural History

**{¶ 2}** This is the third time this matter has been before this court and the second appeal concerning the City's claimed right to arbitrate the underlying class action. This matter was filed by plaintiffs-appellees Clint Yoby, et al. ("appellees"), arising from a dispute as to whether the City was authorized to assess certain adjustments on customers' electric bills. *See Yoby v. Cleveland,* 2020-Ohio-3366 (8th Dist.) ("*Yoby I*"), and *Yoby v. Cleveland,* 2023-Ohio-2180 (8th Dist.) ("*Yoby II*").

**{¶ 3}** In *Yoby I*, the court outlined the underlying facts as follows:

The city's municipally owned utility [CPP] sells electric power to customers in Cleveland, including residential, commercial, and industrial customers such as the [appellees] in this case.

In the 1970s, CPP generated electric power and distributed it to its customers.

. . .

By 1977, CPP essentially ceased generating power and became an electricity reseller. The parties admit that between 1974 and 1984, CPP

did not assess any costs that would qualify for recoupment under the Environmental and Ecological Adjustment (hereinafter "EEA").

In 1984, CPP began levying adjustments to customers' electric bills under the authority of an EEA. It is stipulated that between 1984 and 2013, CPP generated $188 million in revenue by making these adjustments. When these adjustments were assessed, the charges were not separately delineated or identified on the bills. Instead, the amounts were combined with the other city council-approved adjustment — the Energy Adjustment Charge (hereinafter "EAC"). Accordingly, customer bills would list the base-rate charges and an additional "Energy Adjustment Charge," which would include adjustments under both the EAC and EEA.

[Appellees] brought suit against the city contending (1) that CPP was not authorized to adjust customer bills pursuant to [Cleveland Codified Ordinances ("C.C.O.") 523.17] to recover the EEA costs incurred because those costs were not authorized under the ordinance; and (2) CPP was required to separately identify on customer bills the amounts assessed for an EEA, instead of embedding them into a single line item identified as "Energy Adjustment Charge." According to [appellees], the city's actions constituted a breach of contract and fraud.

Both parties moved for summary judgment. The city sought full and complete summary judgment on all claims [breach of contract, fraud, declaratory judgment, injunction, and unjust enrichment], and [appellees] sought partial summary judgment on their breach of contract cause of action. The trial court granted the city's motion for summary judgment, denied [appellees'] motion for partial summary judgment, and entered judgment in favor of the city on all claims of the complaint.

*Yoby I* at ¶ 2-3, 5-8.

{¶ 4} *Yoby I* addressed whether the trial court had properly granted summary judgment in favor of the City. The *Yoby I* Court determined that the City was entitled to immunity on the fraud claims but that genuine issues of material fact remained regarding the breach-of-contract, restitution, and unjust-enrichment

claims along with appellees' claim for declaratory relief. The matter was remanded for further proceedings.

{¶ 5} On remand, the court set a trial date for October 2021, which was later reset. At a telephone conference in May 2022, the court set a new trial date of October 2022. Two weeks after that telephone conference, the City enacted Ordinance No. 472-2022, which, in part, amended sections of Cleveland Cod. Ord. ("C.C.O.") Ch. 523, entitled "Rules and Rates."

> [T]he ordinance contained a new section, C.C.O. 523.115 — Cleveland Public Power Arbitration Panel, which provides arbitration as the exclusive forum to handle all disputes arising under C.C.O. Chapter 523. It states, "The Arbitration Panel has the exclusive authority to review all disputes under this Chapter and to make determinations with regard to the matters presented to it. These determinations shall be binding on the City and the petitioning customer, except that the Commissioner shall have the authority to order that electric service not be terminated." C.C.O. 523.115(b). The ordinance also amended C.C.O. 523.19(b) — Electric Service Agreement, by adding the following: "ART. 8: The Consumer agrees that the exclusive forum for all disputes regarding rates and charges for service provided by the Division of Cleveland Public Power or other issues arising from Chapter 523 or this agreement shall be resolved by the Arbitration Panel as set forth in Section 523.115."

> The change of terms provision in the ESA provide[s]:

>> ART. 3: For the electric service furnished under this contract, the Consumer agrees to pay the City in accordance with the terms, conditions and applicable rate schedule(s) established by or as may be amended from time to time by the City and approved by City Council, and said rates, terms and conditions are hereby made a part of this agreement the same as if incorporated herein.

>> ART. 4: The Consumer agrees to comply with all the rules and regulations as may be established by the City, including the rules and regulations associated with all rates, terms and conditions of the applicable rate schedule(s), as may be amended from time to

time by the City and approved by City Council, all of which are by reference made a part of this agreement.

C.C.O. 523.19(b). The ordinance also included a provision stating that "it is Council's intent to make this Ordinance retroactive to the fullest extent permitted by law[.]" Cleveland City Ordinance No. 472-2022.

*Yoby II* at ¶ 5-6.

{¶ 6} Approximately one month after the ordinance was passed, the City moved to stay proceedings and compel arbitration in the underlying case. The City argued that the CPP Arbitration Panel had exclusive jurisdiction and authority to preside over any dispute arising under C.C.O. Ch. 523. Appellees opposed the motion.

{¶ 7} The trial court held an oral argument on the motion, specifically noting that it was not an evidentiary hearing. Following the oral argument, the trial court denied the City's motion, finding (1) it had jurisdiction to evaluate the ordinance and the change-in-terms provision of the contract, (2) the contract did not allow for retroactive modification, (3) the unilateral imposition of arbitration by the City under the change-in-terms provision was not within the contemplation of the parties at the time of the initial agreement and was unconscionable and unenforceable, (4) the provisions of C.C.O. 523.115 governing appointment of the arbitration panel were unconscionable, and (5) the City waived its right to arbitrate by waiting seven years to compel arbitration by ordinance.

{¶ 8} On appeal, the *Yoby II* panel determined that the class had disputed the existence of an agreement to arbitrate, which implicated R.C. 2711.03(B) and

required the trial court to proceed to trial on the motion.[1]  The panel reversed and remanded the matter for the court to hold such a trial.

{¶ 9} On remand from *Yoby II*, the court held a bench trial on the motion to stay and compel arbitration where the parties appeared and presented evidence. Yoby testified on behalf of the class.  The City presented the testimony of Martin Keane ("Keane"), the director of public utilities for the City.

{¶ 10} Following the hearing, the court issued an order denying the motion to stay and compel arbitration.  The court found that (1) there was no evidence that the appellees had accepted the arbitration agreement, (2) the City waived its right to arbitrate by litigating the action for over seven years, and (3) the arbitration clause, which allowed the City to be its own arbitrator, was unconscionable.

{¶ 11} The City then filed the instant appeal.

## II.  Law and Analysis

{¶ 12} There is a strong public policy in Ohio favoring arbitration of disputes. *Sebold v. Latina Design Build Group, L.L.C.*, 2021-Ohio-124, ¶ 8 (8th Dist.).  We review a trial court's ruling on a motion to stay and compel arbitration under a de novo standard. *Wisniewski v. Marek Builders, Inc.*, 2017-Ohio-1035, ¶ 5 (8th Dist.), citing *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543 (8th Dist.).  But factual findings of the trial court under this standard of review are to be given

---

[1] This statute allows a party claiming to be aggrieved by another party's alleged failure to comply with an arbitration agreement to petition a court of common pleas for an order directing that the arbitration proceed and requires the court to "hear" the parties. The statute further provides that if the making of the arbitration of the agreement of the failure to perform is at issue, the court is to proceed summarily to trial on that issue.

deference. *Gibbs v. Firefighters Community Credit Union,* 2021-Ohio-2679, ¶ 13 (8th Dist.), citing *Taylor Bldg. Corp. of Am. v. Benfield,* 2008-Ohio-938, ¶ 38.

{¶ 13} The City argues that the trial court erred in denying its motion to stay and compel arbitration because it ignored binding precedent requiring the retroactive application of the revised ordinances. The City contends that this matter falls within the four corners of the Ohio Supreme Court's decision in *Pivonka v. Corcoran,* 2020-Ohio-3476. In *Pivonka,* the class-action plaintiffs had filed a complaint requesting a declaratory judgment that a statute relating to Medicaid reimbursements was unconstitutional and seeking the recovery of sums paid to the Ohio Department of Medicaid. Several years after the case was filed, the Ohio legislature enacted a statute that created a mandatory administrative procedure that would be the sole remedy available to any party seeking the type of monetary recovery sought by the *Pivonka* plaintiffs. *Id.* at ¶ 9-11.

{¶ 14} Following the enactment of this statute, Corcoran, the director of the Ohio Department of Medicaid, moved for judgment on the pleadings, arguing that the trial court lacked jurisdiction over the action because the statute had placed jurisdiction solely in the administrative remedy. The trial court denied the motion, finding that the issue was not appropriately determined on the pleadings. *Id.* at ¶ 14. Plaintiffs had also moved for class certification. Corcoran opposed class certification, arguing again that the trial court lacked jurisdiction under the statute. The trial court granted the motion and certified the class.

{¶ 15} On appeal, this court affirmed the trial court's granting of class certification. *Pivonka v. Sears,* 2018-Ohio-4866 (8th Dist.). The *Sears* panel determined that all of the class-certification requirements had been met and that the trial court had not been divested of subject-matter jurisdiction by the statute because plaintiffs had sought a declaratory judgment regarding the constitutionality of the statute addressing overpayments to the Ohio Department of Medicaid.[2]

{¶ 16} The case was appealed to the Ohio Supreme Court. The *Pivonka* Court determined that the statute provided the sole remedy for Medicaid program participants to recover excessive reimbursement payments made to the Ohio Department of Medicaid on or after a certain date. *Id.,* 2020-Ohio-3476*,* at ¶ 31. Consequently, the Court determined that the common pleas court lacked subject-matter jurisdiction over the class action for the named and prospective class plaintiffs whose claims for recovery fell within the express language of R.C. 5160.37.[3]

{¶ 17} The City argues that the issue in *Pivonka* is nearly identical to the matter at hand — a pending class action and subsequent legislation that restricts the forum for a complainant's dispute and provides for an administrative remedy. The

---

[2] The panel noted that "where the General Assembly has enacted a complete and comprehensive statutory scheme governing review by an administrative agency, exclusive jurisdiction is vested within such agency[,]" but also observed that an administrative agency was without jurisdiction to determine the constitutional validity of a statute. *Id.* at ¶ 39, citing *Kazmaier Supermarket v. Toledo Edison Co.*, 61 Ohio St.3d 147, 153 (1991), and *State ex rel. Columbus S. Power Co. v. Sheward*, 63 Ohio St.3d 78, 81 (1992).

[3] The Court acknowledged that the constitutional challenge could not be adjudicated by an administrative agency but maintained that, even with a constitutional challenge, the plaintiff must first exhaust all administrative remedies. *Id.* at ¶ 25. The constitutionality issue could be raised later in an administrative appeal. *Id.*

City contends that this court is required to follow *Pivonka* and hold that the City's ordinance requiring arbitration should be applied retroactively and that the common pleas court lacks jurisdiction to adjudicate this matter.

{¶ 18} While we acknowledge some procedural similarities, we find that *Pivonka* is distinguishable and, therefore, not binding on this matter. Both cases involve legislation enacted after the class action was already pending, but there is a very significant difference — the parties in this case had a contractual relationship arising from the ESA. There was no agreement at issue between the parties in *Pivonka*, and the arguments in *Pivonka* related solely to jurisdiction and the failure to exhaust administrative remedies. While the City asserts that jurisdiction over this dispute has been removed from the common pleas court, the City does not dispute, and in fact, asserts, that there is a binding agreement between the parties. As such, a very different analysis is required than that undertaken in *Pivonka*.

{¶ 19} The City's motion to stay and compel arbitration was brought under R.C. Ch. 2711, which pertains to arbitration provisions in written agreements. Under Ohio law, an arbitration clause in a written agreement "'shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.'" *Hurley v. Betfair Interactive*, 2024-Ohio-5488, ¶ 9 (8th Dist.), quoting R.C. 2711.01(A).

{¶ 20} However, as this court has previously noted:

> [C]ourts may not force parties to arbitrate disputes if the parties have not entered into a valid agreement to do so. *See Boedeker v. Rogers* (1999), 136 Ohio App.3d 425, 429, 736 N.E.2d 955; *Painesville Twp.*

*Local School Dist. v. Natl. Energy Mgt. Inst.* (1996), 113 Ohio App.3d 687, at 695, 681 N.E.2d 1369. As the Supreme Court of the United States has stressed, "arbitration is simply a matter of contract between the parties; it is a way to resolve disputes — but only those disputes — that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. 938, 943, 131 L.Ed.2d 985, 115 S. Ct. 1920.

*Maestle v. Best Buy Co.*, 2005-Ohio-4120, ¶ 10 (8th Dist.). "[P]arties cannot be coerced into arbitrating a claim, issue, or dispute 'absent an affirmative "contractual basis for concluding that the party agreed to do so."'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 660 (2022), quoting *Lamps Plus, Inc. v. Varela,* 587 U.S. 176, 177 (2019), quoting *Stolt-Nielsen, S.A. v. AnimalFeeds Internatl. Corp.*, 559 U.S. 662, 684 (2010).

{¶ 21} The Ohio Supreme Court has set forth the following principles guiding a court's determination of whether to order arbitration pursuant to a written agreement: (1) whether the parties agreed to submit any dispute to arbitration, (2) whether the agreement creates an obligation to arbitrate a particular grievance, (3) when deciding if the parties agreed to submit a particular grievance to arbitration, the court is not to rule on the potential merits of underlying claims, and (4) where an arbitration provision is contained in a contract, there is a presumption of arbitrability. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 10-14, citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661 (1998).

{¶ 22} Appellees assert that they did not agree to submit their claims to arbitration and that the arbitration provision is not valid as it pertains to them.

"When there is a question as to whether a party has agreed to an arbitration clause, there is a presumption against arbitration." *Maestle* at ¶ 22, citing *Spalsbury v. Hunter Realty, Inc.,* 2000 Ohio App. LEXIS 5552 (8th Dist. Nov. 30, 2000), citing *Council of Smaller Ents.* "An arbitration agreement will not be enforced if the parties did not agree to the clause." *Id.*, citing *Henderson v. Lawyers Title Ins. Corp.*, 2004-Ohio-744 (8th Dist.), citing *Harmon v. Phillip Morris Inc.*, 120 Ohio App.3d 187, 189 (8th Dist. 1997).

{¶ 23} Courts apply ordinary principles that govern the formation of contracts to determine whether a party has agreed to arbitrate. *Seyfried v. O'Brien*, 2017-Ohio-286, ¶ 19 (8th Dist.), citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995). "'A valid arbitration agreement, like any contract, requires an offer and acceptance that is supported by consideration and is premised on the parties' meeting of the minds as to the essential terms of the agreement.'" *Rousseau v. Setjo, L.L.C.*, 2020-Ohio-5002, ¶ 8 (8th Dist.), quoting *Corl v. Thomas & King*, 2006-Ohio-2956, ¶ 8 (10th Dist.). Pursuant to the plain language of R.C. Ch. 2711, prior to making any determination regarding the arbitrability of the parties' claims, a court must first determine whether the written arbitration agreement is enforceable under basic contract precepts. *Gibbs v. Firefighters Community Credit Union*, 2021-Ohio- 2679, ¶ 14 (8th Dist.); *see also Benjamin v. Pipoly,* 2003-Ohio-5666, ¶ 31 (10th Dist.).

{¶ 24} The parties agree that a binding contract exists between the City and appellees under the ESA. *Yoby I* at ¶ 13. The City contends that appellees implicitly

agreed to the additional arbitration provision, arguing that the arbitration agreement arose by operation of law. The City further asserts that appellees' continued use of electrical services after notice of the mandatory arbitration provision constituted acceptance of the new contract term.

{¶ 25} We disagree with the City's assertions and find that the City was not permitted to bind appellees to a unilateral modification to the ESA requiring arbitration of claims. The City argues that it had the authority to make amendments to the ESA under the revisions to C.C.O. 523.19. This ordinance states: By application for and receipt of electric service, each consumer shall be deemed to have entered into an electric service agreement in the form prescribed in division (b) of this section. . . ."

{¶ 26} Division (b) sets forth the terms of the ESA. Pertinent to this matter are the following articles in the ESA:

> ART. 3: For the electric service furnished under this contract, the Consumer agrees to pay the City in accordance with the terms, conditions and applicable rate schedule(s) established by or as may be amended from time to time by the City and approved by City Council, and said rates, terms and conditions are hereby made a part of this agreement the same as if incorporated herein.
>
> ART. 4: The Consumer agrees to comply with all the rules and regulations as may be established by the City, including the rules and regulations associated with all rates, terms and conditions of the applicable rate schedule(s), as may be amended from time to time by the City and approved by City Council, all of which are by reference made a part of this agreement.
>
> . . .

ART. 8: The Consumer agrees that the exclusive forum for all disputes regarding rates and charges for service provided by the Division of Cleveland Public Power or other issues arising from Chapter 523 or this agreement shall be resolved by the Arbitration Panel as set forth in Section 523.115.

C.C.O. 523.19(b).

{¶ 27} Thus, the City contends that Articles 3 and 4 of the ESA permit it to unilaterally amend the provisions of the agreement. However, there are two faults in this assertion. First, Article 3 pertains to the customers' agreement to pay for electric service and states that they agree to pay "in accordance with the terms, conditions and applicable rate schedule(s) established by *or as may be amended from time to time by the City . . . .*" Thus, Article 3 only recognizes amendments of the terms, conditions, and applicable rate schedule with regard to the customers' agreement to pay. Article 3 therefore provides no authority for the City to amend the ESA to add an arbitration term.

{¶ 28} Article 4 also provides no support to the City's argument. We recognize that Article 4 requires customers to "comply with all the rules and regulations as may be established by the City . . . *as may be amended from time to time by the City . . . .*" (Emphasis added.) However, the above-italicized language has only appeared in Article 4 since the May 2022 amendments (the same amendments that implemented the arbitration provision). The City's witness at trial, Keane, testified that the original ESA had been effective since 1993 and was not amended until May 2022. (Tr. 53.) In the prior version, Article 4 did not contain the language stating that the City may amend the "rules and regulations . . . from

time to time." Ordinance No. 472-2022 added the amendment provision to Article 4. (Joint exhibit No. 1 and the City's exhibit Y; tr. 76.)

{¶ 29} The City contends that Ordinance No. 472-2022 specifically stated that "it [was] Council's intent to make this Ordinance retroactive to the fullest extent permitted by law . . . ." As such, the City argues that all of the amendments made under Ordinance No. 472-2022 all apply retroactively.

{¶ 30} Even assuming arguendo that the amendments arising from Ordinance No. 472-2022 could all be made retroactive based upon the above language, we still must examine if the amendments to the ESA were properly added under traditional contract law. While the City attempts to distinguish the ESA as an agreement created "by operation of law," the City has not directed us to any case or other authority that would require us to treat the ESA differently than any other agreement. Indeed, the City is more than willing to rely on traditional contract principles when it argues that appellees "accepted" the arbitration provision by continuing to use the electric service.

{¶ 31} A party with a unilateral right to modify a contract does not have the right to make any kind of change it chooses. *Maestle*, 2005-Ohio-4120, at ¶ 20 (8th Dist.). In examining "change in terms" clauses that allow one party to unilaterally modify a contract, courts have differentiated between clauses that stated that the party could *amend* the contract terms or ones that stated that the party was permitted to *add or amend* the agreement terms. And even when agreements do

permit a party to "add" terms, courts then examine whether the original contract had contemplated such an amendment.

{¶ 32} Ohio courts have rejected the unilateral addition of an arbitration clause when the original contract did not contemplate such an addition. In *Maestle,* this court held that an arbitration clause was invalid and unenforceable in part because the appellee credit-card holders could not have anticipated that the bank would amend the agreement to add an arbitration clause when the contract did not previously contain any clause regarding forums or methods for dispute resolution. Likewise, in *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107 (1984), the Ohio Supreme Court held that an arbitration clause that was not in the parties' original agreement could not be upheld because there had been no meeting of the minds as to the inclusion of such a term in the original contract. *See, also, e.g., Rudolph v. Wright Patt Credit Union*, 2021-Ohio-2215, ¶ 33 (2d Dist.) (finding that plaintiff could have anticipated addition of arbitration provision when the agreement already contained terms addressing dispute resolution method); *Sevier Cty. Schools Fed. Credit Union v. Branch Banking & Trust Co.*, 990 F.3d 470, 479 (6th Cir. 2021) (holding that district court should have considered whether bank's addition of an arbitration provision was "inconsistent with the substance of the original change-of-terms provision"); *Follman v. World Fin. Network Natl. Bank*, 721 F.Supp.2d 158 (E.D.N.Y. 2010) (applying Ohio law and noting that the change-of-terms provision stated that the bank was permitted to "add, change, or delete" the terms of the

agreement at issue but that an arbitration clause was not the type of term contemplated).

{¶ 33} Here, Article 4 of the ESA provides that the terms of the agreement could be "amended from time to time"; the provision did not state that a new provision could be added to the ESA. Prior to the amendments of C.C.O. Ch. 523, the ESA did not contain any provision addressing forums for the resolution of disputes. "'Ohio law continues to hold that the parties bind themselves by the plain and ordinary language used in the contract unless those words lead to a manifest absurdity.'" *Maestle* at ¶ 24, quoting *Convenient Food Mart, Inc. v. Countrywide Petroleum Co.*, 2005-Ohio-1994 (8th Dist.). We therefore do not find that the terms of the ESA allowed the City to add a mandatory arbitration clause.

{¶ 34} Moreover, even if such an addition was permitted, the City had not provided proper notice to appellees of the new contract term. Without proper notice, appellees could not have agreed to the modification. We find no merit to the City's assertion that appellees had "knowledge" of the arbitration term. First, we note that the City's motion to stay and compel arbitration was filed on June 21, 2022, while the first purported notice of a change in terms of the ESA was not sent out to customers until July 8, 2022. In addition, the claimed notice was only sent to current customers as of the date of that mailing and some appellees were no longer customers at that time. Consequently, these appellees did not receive any notice regarding a change in the ESA's terms.

**{¶ 35}** Even assuming arguendo that the purported notice had been properly sent to all appellees, the language in the notice was wholly inadequate to notify appellees of the new arbitration requirement. The claimed notice was located on the bottom half of the back side of a routine electricity bill and appeared as follows:

> **ATTENTION CUSTOMERS:** The City of Cleveland, by and through City Council, amended the City Charter Title III, Chapter 523 Rules and Rates. Specifically, Codified Ordinance §523.19 amends your Electric Service Agreement with Cleveland Public Power effective May 25, 2022. Please review the City of Cleveland Codified Ordinance §523.19 which summarizes the amended Electric Service Agreement.
>
> Website:
> https://codelibrary.amlegal.com/codes/cleveland/latest/cleveland-oh/0-0-0-27101#JD_Chapter523.

(Joint exhibit No. 5.)

**{¶ 36}** As evident above, the purported notice on the back of the electricity bill does not contain any reference to mandatory arbitration and does not specify which provisions had been amended or that C.C.O. 523.115 had been added.[4] Moreover, simply providing the website where the amended ordinance can be found presumes that all customers have internet access. And even if appellees were able to visit the listed website, they would have been taken to the new version of C.C.O. Ch. 523. In order to understand what provisions had been amended, appellees would have been required to compare the past and present versions of the

---

[4] C.C.O. 523.115 is labeled "Cleveland Public Power Arbitration Panel." Division (b) of this section states that "[t]he Arbitration Panel has the exclusive authority to review all disputes under this Chapter and to make determinations with regard to the matters presented to it. These determinations shall be binding on the City and the petitioning customer. . . ."

ordinance chapter and identify the differences. Under these circumstances, we cannot impute knowledge of the new arbitration requirement to appellees.

{¶ 37} Finally, we find no merit to the City's contention that appellees had notice of the modification to the ESA because the proceedings in which Ordinance No. 472-2022 had been enacted were open to the public and the passage of the ordinance was on Cleveland Public Power's website under the section identifying the latest news. This is not sufficient to demonstrate that the City provided notice to appellees.

{¶ 38} The City had the burden to establish that sufficient notice was sent and that an enforceable arbitration agreement existed. *See Gibbs*, 2021-Ohio-2679, at ¶ 18 (8th Dist.). The record fails to demonstrate that sufficient notice of the modifications to the ESA was provided to appellees to demonstrate a "meeting of the minds" or even an opportunity to accept the addition of the mandatory arbitration provision. The content of the purported notice first provided to appellees in the July 2022 bill did not provide any indication that the updated terms involved the addition of a mandatory arbitration provision. The claimed notice was located on the back of the bill and simply stated that the City had amended C.C.O. Ch. 523. Thus, clear notice was not provided for appellees to make an informed decision or to demonstrate that they agreed to be bound by the arbitration provision.

{¶ 39} "'In order for plaintiff to have been bound by the terms of the arbitration agreement, there must be some evidence that shows "that a reasonably prudent user would have been on inquiry notice that [an arbitration] agreement

existed."'" *Gibbs* at ¶ 22, quoting *Coleman v. Alaska USA Fed. Credit Union*, 2020 U.S. Dist. LEXIS 3301 (D. Alaska Jan. 9, 2020), citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 569 (9th Cir. 2014). The City has made no showing that a reasonably prudent person would have been aware of the arbitration provision simply because the proceedings and passage of the ordinance were a matter of public record and posted on a website. Again, the customer may not have been able to access the website, and once on the website, the amended provisions were not clearly identified.

{¶ 40} Additionally, at the time C.C.O. 523.19(b) was amended and C.C.O. 523.115 was added, the parties had been engaged in active litigation for seven years. The City should have been well aware that appellees would not agree to the modification of the ESA to include a mandatory arbitration clause at this point in the case. We note the following language from *Gibbs*:

> We would be remiss not to point out that . . . the circumstances argued in this case present "the antithesis of good faith and fair dealing." In light of the representation that active negotiations were occurring between the parties at the time the email notification was sent [regarding the change of terms], [the credit union] arguably had knowledge that appellees would have opted out of the provision had proper notice been given.

*Id*. at ¶ 18, fn. 1, quoting *Sevier*, 990 F.3d at 479. Further, while not binding on the instant matter, we find *Cobb v. Ironwood Country Club*, 233 Cal.App.4th 960 (2015), instructive:

> With respect to arbitration provisions specifically, this court has already held that the implied covenant of good faith and fair dealing prohibits a party from "mak[ing] unilateral changes to an arbitration

agreement that apply retroactively to 'accrued or known' claims because doing so would unreasonably interfere with the [opposing party's] expectations regarding how the agreement applied to those claims." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 61 [159 Cal. Rptr. 3d 444].) In reaching this conclusion, we join other courts. . . . *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1465 [140 Cal. Rptr. 3d 38] ["A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims."].)

*Id.* at 966.

{¶ 41} On the record before us, the City cannot demonstrate that appellees clearly agreed to the arbitration provision. As outlined above, the City did not provide proper notice to appellees to bind them to the arbitration provision; indeed, at the time the motion was filed, the City had not notified its customers in any way. Even when the City did subsequently attempt to provide notice on the back of an electricity bill, the language of the purported notice did not reference arbitration and was inadequate to apprise appellees of the changes. And there is no evidence that class members who were no longer customers at the time of the purported notice were notified at all. Without sufficient notice of the unilateral modification of the ESA to add a new mandatory arbitration term, there was no meeting of the minds, and consequently, no binding agreement to arbitrate.

{¶ 42} Contrary to the City's assertion, this opinion will not "run roughshod over the City's Constitutional rights and Cleveland City Council's legislative authority." (City's reply brief, p. 5.) We take no position regarding the validity of the arbitration provision as it applies to other customers that are not members of

the class before us.  We have examined the arbitration provision of the ESA solely as it pertains to the facts and circumstances of this case.

{¶ 43} Because we have determined that there was no meeting of the minds regarding arbitration as the sole method of dispute resolution under the ESA, and thus, there was no valid agreement to arbitrate, the trial court did not err in denying the City's motion to stay and compel arbitration. We find no merit to any other arguments raised by the City that are not specifically addressed herein.  The City's sole assignment of error is overruled, the judgment of the trial court is affirmed, and the case is remanded for further proceedings..

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 44} I respectfully dissent from the majority's conclusion that there was not a valid agreement to arbitrate this action.  I believe that conclusion is premature.

I would reverse the decision of the trial court and remand the case for a further hearing for the trial court to analyze and address the effect of *Pivonka v. Corcoran*, 2020-Ohio-3476, on this action.

{¶ 45} As the City of Cleveland (the "City") points out in its brief, the City is a municipal corporation authorized under Ohio Const., art. XVIII, § 1-14 and R.C. Ch. 703. The City owns and operates a public electric utility, Cleveland Public Power ("CPP") in accordance with Ohio Const., art. XVIII, § 4-6 for the benefit of its citizenry.

{¶ 46} Consistent with the Ohio Const., art. XVIII, § 7, the City adopted Chapter 19 of the Cleveland City Charter and Chapter 523 of the Codified Ordinances of Cleveland to govern CPP's operations. The City administers the relationship between itself and CPP's customers by operation of law through ordinances. According to the City, Cleveland Ordinance No. 472-2022, effective May 25, 2022, inserted a retroactive arbitration provision into the relationship between CPP and its customers. The City raised a question over whether the dispute could be heard by the common pleas court or should be referred to the CPP arbitration panel consistent with the ordinance.

{¶ 47} Comparable to this matter, *Pivonka*, 2020-Ohio-3476, dealt with the question of whether a common pleas court had jurisdiction over a class action filed on behalf of Medicaid program participants seeking money damages against the state upon claims asserting that the Ohio Department of Medicaid ("the ODM") was not entitled to collect the reimbursements at issue pursuant to subrogation rights in

former R.C. 5101.58. The Supreme Court of Ohio ruled that the administrative-review process contained in R.C. 5160.37, a renumbered and revised version of former R.C. 5101.58, which was enacted after the lawsuit was commenced, provided the "sole remedy" for Medicaid program participants to recover excessive reimbursement payments made to the ODM on or after September 29, 2007. *Pivonka* at ¶ 2. Therefore, the Supreme Court of Ohio determined that the trial court lacked subject-matter jurisdiction over the class action for the named and prospective class plaintiffs whose claims for recovery fell within the statute's express language. *Id.* The case was remanded for a determination of whether the unnamed prospective class members who reimbursed the ODM before September 29, 2007, could maintain an action in the common pleas court. *Id.*

{¶ 48} Although *Pivonka* was raised and argued by the City, the trial court did not analyze the impact of *Pivonka* in its decision. In fact, the trial court did not even mention *Pivonka*. In my view, the trial court failed to evaluate the application and claimed retroactivity of Ordinance No. 472-2022 under *Pivonka*. Instead, the trial court side-stepped *Pivonka* and applied concepts of a traditional, negotiated bilateral private contract to determine the relationship between the City and CPP's customers. It may well be that the trial court determined that *Pivonka* was not applicable to this action; however, an analysis or explanation as to whether it is applicable is necessary for any meaningful review by this court.

{¶ 49} The majority seized upon a distinction between this case and *Pivonka* raised in appellee's brief noting that *Pivonka* involved an administrative-review

process, whereas this current case involves a contract dispute and an arbitration provision neither of which were at play in *Pivonka*. While true, those distinctions do not address the commonality of the statute in *Pivonka* and the ordinance here, which both arguably provide retroactive remedies imposed after a class action was filed for the recovery of funds against a governmental entity. Although it may ultimately be a question for the Supreme Court of Ohio to decide, the scope of *Pivonka* and its application or non-application herein should be fully vetted in the courts below before that question is answered by the State's highest court.

{¶ 50} The trial court has not addressed why *Pivonka*, 2020-Ohio-3476, is not applicable. What's the distinction that makes it inapplicable? How is a retroactive remedy in the form of an administrative proceeding different than one in arbitration? Why can one retroactive remedy be viable for one governmental entity and not for another? Is the retroactivity provision in the Cleveland Ordinance deficient as compared to the language in R.C. 5106.37? How so? Should *Pivonka* be limited to administrative proceedings? Why or why not? Such questions should be addressed by the trial court in the first instance.

{¶ 51} The trial court certainly came to several conclusions addressing many traditional contract issues involving arbitration in a traditional contract format, but there is no analysis on the reasoning declining to apply *Pivonka*.

{¶ 52} Recently a panel on this court dismissed an appeal arising from subsequent proceedings in *Pivonka*, finding that the record was not fully developed to determine whether the trial court had subject-matter jurisdiction over the case.

*Pivonka v. Corcoran*, 2024-Ohio-5318 (8th Dist.). Like that case, this case requires further development.

{¶ 53} I am cognizant that this dispute has gone on far too long, but the issues related to *Pivonka*, 2020-Ohio-3476, must be fully addressed below. The trial court judge and the majority provide an excellent analysis of traditional contract law and arbitration, but in my view, the threshold question is the retroactive remedy in this case and *Pivonka's* impact on it.

{¶ 54} For these reasons, I dissent.